Gilluly vs. The City of Madison.

---

GILLULY, Respondent, vs. THE CITY OF MADISON, Appellant.

*May 5 — June 24, 1885.*

INSTRUCTIONS TO JURY. *(1) Abstract propositions.*
MUNICIPAL CORPORATIONS. *(2) Surface water: Gutters: Lots below grade of street. (3) Ordinance: Repairing and cleaning gutters.*

1. It is not error to refuse to give an instruction which, though correct as an abstract proposition, is not applicable to the case.
2. If, by reason of the negligent and unskilful construction of a gutter by a municipality, or its negligent failure to keep the same in repair and free from obstructions, surface water is caused to flood a lot upon which it would not otherwise have flowed, the municipality is liable for the consequent damage, although such lot is below the grade of the street. *Waters v. Bay View,* 61 Wis. 642, distinguished.
3. A municipal ordinance requiring lot-owners to keep the gutters opposite their premises in good repair and free from obstructions, is *held* to relate only to the ordinary open gutters along the streets, and not to apply to a blind ditch or culvert covered with planking and soil.

Gilluly vs. The City of Madison.

APPEAL from the Circuit Court for *Dane* County.

The complaint shows that the defendant is a municipal corporation and that it is its duty to provide a perfect and efficient system of drainage and sewerage within its corporate limits, and to keep the same in good repair and free from obstructions, and to construct the same so skilfully that it shall not become a nuisance either to the public or to any private person, and to establish and alter the grades of streets in said city; that the plaintiff is the owner of lot 1, block 10, in said city, situated on the southeast side of Gilman street at the corner of University avenue, and for more than twenty-five years said premises have been occupied by himself and his family as a homestead; and that the dwelling house thereon is located upon the west end of said lot within a few feet of the line of Gilman street.

The complaint then alleges that before the grading of streets and construction of gutters in the vicinity of said lot the surface water of a large area of land lying between said lot and State street naturally passed off over lands in the rear of plaintiff's said lot without doing him any material injury; that in 1867 the defendant changed and reestablished the grades of Gilman street and University avenue adjacent to said lot by raising them to a considerable height above the natural surface of said lot; that for the purpose of collecting together the surface water of that large area of land lying between said lot and State street the defendant constructed two gutters commencing on either side of the traveled track on Gilman street at the point where the south line of State street intersects said Gilman street, thence running southwestward along Gilman street to a point within 200 feet of University avenue, at which point the gutter on the northwest side of the street crosses the same and unites with the gutter on the southeast side, which last-mentioned gutter is continued to the point where Gilman street intersects the north line of University

avenue and thence about two rods in an easterly direction; that the defendant's officers were negligent and unskilful in the construction of said gutter and grading of said streets; that the portion of the gutter nearest plaintiff's lot, and for a distance of eighty-five feet, is merely a blind ditch, the sides of which are laid up with quarry stone, without plaster, cement, or other substance to keep the water from percolating through it; that on account of the insufficiency of size of this portion of the gutter, the rough and uneven materials of which it is made, the short angle it makes where it intersects the north line of University avenue, and the fact that the line of the bed of this portion of the gutter is ascending instead of descending, the gutter now is and always has been incapable of readily receiving and discharging that large quantity of water which is accumulated in time of rains by reason of the upper portion of this gutter; and that the defendant, by its careless and negligent management of said gutter, has permitted weeds and other substances to grow in and obstruct the passage of water in said gutter since its construction.

The complaint further alleges that, by reason of the premises, large quantities of water, during the wet season of 1882 and every preceding year since the construction of said gutter, have escaped from that portion of the gutter designated as the blind ditch, into plaintiff's cellar, basement, and garden; that his cellar has thereby been rendered useless and his basement untenantable; that the plaintiff and his wife and children have been made sick and have suffered great inconvenience, and pain in body and mind, and losses, and expenses for medical attendance; that in short the unskilful and reckless construction of said gutter created a great nuisance, to plaintiff's damage $2,000.

The answer, among other things, denies all allegations of negligence and unskilfulness in the construction or management of the gutter, and alleges that the same was built of

proper material, in a skilful and workmanlike manner, and of proper capacity. It denies also that it is its duty to clear out the weeds and other obstructions from the gutter, and alleges that such duty is imposed by ordinances of the city upon the plaintiff.

The evidence given on behalf of the plaintiff tended to sustain the allegations of the complaint. The defendant introduced in evidence, among other things, sec. 39, ch. II, of the ordinances of the city of *Madison,* which reads as follows:

" Section 39.   The owners of all lots or pieces of ground opposite which gutters are or may be constructed, shall keep the same in good repair, and keep the same from filling up; and if any such owner or owners shall neglect to repair any gutters which they are required to repair by the provisions of this ordinance, the common council may order the said gutters so neglected to be repaired by such owner or owners, to be repaired or cleaned at the expense of such owner or owners, and such expense shall be collected in the same manner that the costs of laying gutters is collected."

The instructions to the jury given and refused will sufficiently appear from the opinion. There was a verdict for the plaintiff assessing his damages at $226; and from the judgment entered thereon the defendant appealed.

The cause was submitted for the appellant on the brief of *R. M. Bashford,* and for the respondent on that of *Smith & Rogers.*

Cole, C. J.   The learned counsel for the defendant insists that the court below erred in refusing to give an instruction, asked on the part of the city, to the effect that it was not liable for any error or want of judgment upon which its system of drainage was devised, nor for any defect or want of efficiency in the plan of drainage adopted. The answer to this objection is that the plaintiff does not

rest the liability of the city for the damage to his property on any such ground, as we understand the case. He does not claim that the system or plan of drainage adopted by the city was unsuitable or defective, and that he was thereby injured. It may well be the law, as claimed by counsel, that a municipal corporation is not liable for any error or want of judgment upon which its system of drainage of surface water may be devised, nor for any defect in the plan which it adopts. The common council must, from necessity, exercise its judgment and discretion in such matters, and should be at liberty to adopt what seems to be the best plan to accomplish the end, having regard to the means at the disposal of the city for the purpose of sewerage. "When the injury is occasioned by the *plan* of the improvement, as distinguished from the mode of carrying the plan into execution, there is not ordinarily, if ever, any liability." 2 Dill. Mun. Corp. § 1051. But, as we have said, the plaintiff does not rest his right of action on the ground that the plan of drainage adopted by the city was defective and injured his property; hence, though the instruction was correct as an abstract proposition, it was not applicable to the case. Consequently it was not error to refuse it.

The next error assigned is the refusal of the court to give portions of the third and fourth instructions, and the entire sixth instruction. The proposition embraced in these instructions not given, is, in substance, that if plaintiff's premises were below the grade of the street, and the injury complained of was in any way occasioned by reason thereof, or if a greater quantity of surface water was thrown upon the premises than they would have received if raised to the proper grade, after the city had established it and constructed its system of drains and sewers, then the city was not liable for such damage, it being the duty of the plaintiff to raise his premises to the proper grade. In support of the correctness of these instructions counsel quotes a por-

tion of the section of Judge Dillon's work which we have above cited from. In that section the learned author has stated what he deems the result of the authorities on the question of municipal liability for injuries caused by surface water, in four general propositions. We have already given his second proposition. It may be well, in order to have the views of this eminent jurist on this question, to quote the rest of the section, which is as follows:

" *Third.* But in the case last supposed there will be a liability, if the direct effect of the work, particularly if it be a sewer or drain, is to collect an increased body of water, and to precipitate it onto the adjoining private property to its injury. But since surface water is a common enemy which the lot-owner may fight by raising his lot to grade, or in any other proper manner, and since the municipality has the undoubted right to bring its streets to grade, and has as much power to fight surface water in its streets as the adjoining private owner, it is not ordinarily, if ever, liable for simply failing to provide culverts or gutters adequate to keep surface water off from adjoining lots *below grade*, particularly if the injury is one which would not have occurred had the lots been filled so as to be on a level with the street. The cases are not in harmony on the point last presented, but the above is believed by the author to be the correct doctrine. *Fourth.* There is a municipal liability where the property of private persons is flooded, either directly or by water being set back, when this is the result of the negligent execution of the plan adopted for the construction of gutters, drains, culverts, or sewers, or of the negligent failure to keep the same in repair and free from obstruction; and this, whether the lots are below the grade of the streets or not. The cases support this proposition with great unanimity."

Now, when the facts of this case are considered, one can hardly fail to see that according to this statement of

the law the city is liable for the injury complained of; for the *gravamen* of the complaint is — and there was evidence tending to prove it — the negligent and unskilful construction of the gutter along the plaintiff's premises, especially the failure of the city to keep the same clear from obstructions so that the surface water would have a free passage-way through it. This is apparent from the allegations that the gutter nearest the plaintiff's premises, for a distance of eighty-five feet, was merely a blind ditch, the sides of which are laid up with quarry stone, without plaster or cement to keep the water from percolating through it; that on account of the insufficient size of that portion of the gutter, and the rough and uneven material of which it is made, the short angle it makes where it intersects the north line of University avenue, and that the bed of the gutter is ascending instead of descending, the gutter is incapable of readily receiving and discharging the large quantity of water which is accumulated in time of rains. And it is further alleged that the city, by its careless and negligent management of the gutter, has permitted weeds and other obstructions to grow in and obstruct the passage-way of water since its construction, by reason whereof large quantities of water, during the wet season of 1882, and every preceding year since the gutter was built, have escaped from this blind ditch into plaintiff's cellar, basement, and garden. This, we think, states an actionable wrong. It is true, the evidence shows that the premises were below grade. And the real meaning of the instructions refused is, if the premises were below the established grade, and the injury was in any way occasioned by reason thereof, there could be no recovery, because it was the duty of the plaintiff to raise his lot to the proper grade. This was, in effect, ignoring all negligence on the part of the city in the construction of the gutter, and in failing to keep it free from obstructions.

In this case an increased quantity of surface water, collected from other sources than the adjoining street, was made to flow in the gutter to and around the plaintiff's premises. It seems to us it was the duty of the city to exercise reasonable care in the construction of the gutter in the first instance; also not to suffer it to get out of repair, or fill up with weeds and other matter, so as to cause the water to overflow into the plaintiff's cellar and basement, to his injury, whether the premises were below grade or not. The case is distinguishable from *Allen v. Chippewa Falls*, 52 Wis. 430; *Waters v. Bay View*, 61 Wis. 642; and *Heth v. Fond du Lac*, *ante*, p. 228, where there was no allegation or proof of any negligence or unskilfulness on the part of the municipality, either in grading its streets, or in constructing gutters thereon for carrying off surface water.

At first glance, the case of *Waters v. Bay View* might seem to affirm the immunity of the defendant city; but there is a very marked distinction between that case and this. There the village, in grading Potter avenue, allowed an old gutter to remain, or constructed a new one under the street to carry off the surface water which sometimes accumulated on the adjoining lands of one Link, and the lands of the plaintiff and others beyond the lands of Link, and which usually passed off through a ravine down to and through this culvert. The culvert became obstructed, and thereby caused the surface water to flow back upon the lands of the plaintiff. The court decided that the village was not bound to make provisions for carrying off the surface water; that it had the same right over its streets as any other owner, and might hinder the flow of surface water upon the street from the lands of other proprietors; and when it made provision by a sewer or drain to carry off the surface water of adjoining lands, it might discontinue or abandon the sewer, if such owners were left in no worse

condition than they would have been if such sewer or drain had never been made.

In this case it appears that surface water was drawn from lands on the opposite side of the street by means of a culvert, also was collected from other sources than the street,— surface water which otherwise would not have run to the plaintiff's lot,— and was carried along the side of the street in a gutter or blind ditch around his premises. If there was negligence in the construction of this gutter or blind ditch, or there was a negligent failure to keep the same in repair, free from obstructions, and the plaintiff was thereby injured, he is entitled to redress, though his lot is below grade. We recall no case in this court in conflict with this view, nor do we think any of the cases cited by counsel lay down a different rule. It seems to us it would be stretching the doctrine of immunity from liability to an unreasonable extent, to hold there was no responsibility on the part of the city in such a case. See *Freburg v. Davenport*, 63 Iowa, 119; *Weis v. Madison*, 75 Ind. 241, where will be found a very able discussion of the question of municipal liability for injuries caused by surface water.

The fourth error assigned was the refusal of the court to instruct that it was the duty of the plaintiff to keep the gutter in front of his premises in proper condition, free from all obstructions, and if he failed to do this there could be no recovery. On this point the court charged that, in order for the plaintiff to recover in the action, the jury must find "that in grading Gilman street to and at its intersection with University avenue, surface water, such as is liable to accumulate in heavy rain-storms, during ordinary seasons, was drawn from lands on the opposite side of the street from plaintiff's lot by means of a culvert across said street, and that it, and surface water from other sources than the street, which otherwise would not have run to the

plaintiff's lot, was taken along the side of said street in a gutter to and around the plaintiff's lot, and that by reason of a culvert or blind ditch in front of his lot, defective in its construction, or which was suffered to get out of repair, or fill up, such surface water overflowed or ran from such culvert upon and into the plaintiff's lot, or into his basement, to the injury of its use, and the use of his lot and dwelling." This charge was excepted to.

It is evident that in this charge the right of recovery is made to depend upon certain essential facts. Unless the jury found that these facts existed, they were told the city was not liable. We may assume, then, that the facts specified in the charge were established to the satisfaction of the jury. This being the case, is not the city responsible for the injuries to plaintiff's property occasioned by the negligent construction of the gutter or blind ditch in front of his lot, especially because it suffered it to get out of repair? It is said there was no defect in the construction of the gutter, and that the city is not liable for its being obstructed, because there is an ordinance in force which, among other things, requires the owner of a lot abutting on a street to keep all gutters opposite his premises in good repair and free from obstructions. The learned circuit court said it was doubtful whether this ordinance, in relation to keeping gutters clear and in repair, applied to a covered ditch like the one in question. We are quite clear that it does not. The ordinance should be construed as relating only to the ordinary open gutters along the streets. This gutter, or rather blind ditch, was covered by the city with plank for about seventy feet, and upon the plank was thrown a small depth of earth. The ditch below the stringers which supported the plank was from ten to fifteen inches deep. It was doubtless a wise precaution for the city to cover this ditch so as to prevent teams and persons from

getting into it and being injured.    Such blind culverts should be under the control of the city, so that they may be kept thoroughly clean from rubbish and mud, and also to insure proper covering.    They are especially dangerous places unless well covered or guarded, and the liability of the city for personal injuries would be greatly increased if lot-owners were allowed to interfere with them.    The plaintiff was of the opinion that he had no right to uncover the ditch and clear it out, and we think this view was correct.    There was evidence which tended to prove that the ditch was "pretty well filled up with mud and dirt." This certainly tended to show actionable negligence on the part of the city.

Another error assigned is the refusal of the court to give an instruction to the effect that if any right of action ever existed in favor of the plaintiff, by reason of the change of grade of the street, it accrued more than six years prior to the commencement of this action, and was therefore barred. There was surely no error in refusing to give this instruction.    What the plaintiff complained of was in the nature of a private nuisance to his property.    Whenever there was any considerable rain-fall the surface water which was brought to this blind ditch escaped from it into his basement.    This was the wrong or injury done to his premises, not the change of the grade of the street.

We think there is nothing else in the exceptions which requires special notice.    There being no error in the record, the judgment of the circuit court is affirmed.

*By the Court.*— Judgment affirmed.