ROBB, Respondent, vs. CITY OF MILWAUKEE, Appellant.
[Two cases.] *

*October 15—November 10, 1942.*

* Motions for rehearing denied, with $25 costs, in one case only, on January 12, 1943.

434

For the appellant there was a brief by *Walter J. Mattison,* city attorney, and *Omar T. McMahon,* assistant city attorney, and oral argument by *Mr. McMahon.*

*Michael J. Dunn, Jr.,* of Milwaukee, for the respondents.

FOWLER, J. As appears from the foregoing statement, the plaintiff Marie was walking east on the sidewalk on the north side of a city street adjacent to a ball field maintained by the city when struck in the eye with a hard baseball knocked by a batter that caromed off the top of a six-foot fence close to the sidewalk. On the trial a jury found, (1) playing baseball on the field rendered the adjacent walk "unsafe and dangerous to pedestrians;" (2) this was the efficient cause of plaintiff's injury; (3) a want of ordinary care on plaintiff's part contributed to her injury; (4) twenty-five per cent of the causal negligence was attributable to the plaintiff Marie. The court under the comparative-negligence statute, sec. 331.045, granted judgment on the verdict for seventy-five per cent of the damages assessed by the jury. From this judgment the city appeals. The plaintiffs by motion for review contend that the court on their motion after verdict should have changed the answer of the question on contributory negligence from "Yes" to "No" and granted judgment for the full amount of the damages assessed.

The court charged the jury that it was the duty of the city "to keep the public streets reasonably safe for public travel;" that "reasonably safe" does not mean "absolute safety" or "freedom from hazard;" that the city is not an insurer; that maintaining a field for playing baseball is not "dangerous in itself or unlawful;" and that it was for the

jury to determine whether playing ball under all the circumstances existing rendered the adjacent street "unsafe and dangerous" as these terms were defined.

In *Brown v. Milwaukee Terminal R. Co.* 199 Wis. 575, 224 N. W. 748, 227 N. W. 385, this court held that maintaining a tree on the street between the sidewalk and the curb line constituted a nuisance when through decay it became a menace to persons traveling the street, and rendered the owner of the adjacent premises liable for injuries sustained to a traveler through its falling, and on a verdict finding that the tree "was dangerous and unsafe to passers-by" rendered judgment for the plaintiff.

Under this decision and the court's instruction in the instant case and the jury's finding that playing baseball on the field rendered the walk "unsafe and dangerous" to pedestrians, maintaining the field under the circumstances existing constituted a nuisance.

The trial court granted judgment on the double-barreled theory that the jury's finding (1) was a finding of "negligence" and of "nuisance." In the view we take of the case we need only consider the nuisance theory.

The first Wisconsin case involving the question of a municipality's liability for creating a nuisance that we have noticed is *Harper v. Milwaukee,* 30 Wis. 365. It is there stated, page 372, "that a municipal corporation has no more right to erect and maintain a nuisance than a private individual possesses, and an action may be maintained against such corporation for injuries occasioned by a nuisance for which it is responsible."

Perhaps the next case for consideration is *Little v. Madison,* 42 Wis. 643, 652, wherein it was held on demurrer to the complaint for insufficiency that licensing an exhibition of two bears on a city street whereby plaintiff's team was frightened and injury to his intestate resulted imposed liability on the city for creating the existence of a public nuisance on

a public street. This case after trial again came before the court in 49 Wis. 605, 6 N. W. 249. It appeared on the trial that the license was not to exhibit in the public street, as the court had construed the complaint to mean in the first case, but to "give a bear show," and it was held that this implied that the show was to be given in a "suitable place," and that the negligence of the city police in not seeing that the show was given in such a place and not on the public streets would not impose liability. The opinion left undisturbed the first pronouncement that to license an exhibition on the public street imposed liability if in fact the exhibition created such danger as to constitute a public nuisance. The case was sent back for a new trial. That the order was not for dismissal instead of a new trial is explainable only on the theory that if exhibiting the bears on a "private lot" would create danger to persons on the adjacent street and thereby create a nuisance in fact the city would be liable notwithstanding the implication of the general terms of the license. The appellant contends that this case is in effect overruled by *Schultz v. Milwaukee,* 49 Wis. 254, 5 N. W. 342, and *Hubbell v. Viroqua,* 67 Wis. 343, 30 N. W. 847, but these cases are distinguished and leave the *Little Case, supra,* unaffected.

*Hughes v. Fond du Lac,* 73 Wis. 380, 41 N. W. 407, held the city liable for leaving a large roller being used in repairing the city streets standing on a street whereby the plaintiff's team became frightened and ran away and caused injury to him, on the ground that so leaving the roller created a public nuisance. This case and *Little v. Madison, supra,* are either both or one or the other recognized as correctly stating the law in *Morrison v. Eau Claire,* 115 Wis. 538, 92 N. W. 280; *Hogan v. Beloit,* 175 Wis. 199, 207, 184 N. W. 687; *Bruhnke v. La Crosse,* 155 Wis. 485, 487, 144 N. W. 1100; *Jensen v. Oconto Falls,* 186 Wis. 386, 391, 202 N. W. 676; and *Bernstein v. Milwaukee,* 158 Wis. 576, 578, 149 N. W. 382. In the latter case it is expressly stated that the governmental-

function rule does not apply where the municipality is maintaining a public nuisance. In *Crowley v. Clark County*, 219 Wis. 76, 81, 261 N. W. 221, the writer of the opinion states that the *Hughes Case, supra,* might better have been rested on sec. 81.15, Stats., for leaving an obstruction on a street for an unreasonable length of time and thereby rendering the street unsafe for travel. But if so, the *Hughes Case* and the *Little Case* were both decided on the hypotheses that the thing involved constituted a public nuisance; and that maintenance of such nuisance imposes liability for injuries caused thereby.

Another line of Wisconsin cases is to the point that a city is liable for injury resulting from its constructions in the public streets that are of a nature such as to constitute a nuisance. The rule is stated in *Folk v. Milwaukee*, 108 Wis. 359, 364, 84 N. W. 420, as follows:

"There is another principle frequently approved by this court, namely, that a municipal corporation may not construct or maintain a nuisance in the street . . . to the damage of another."

*Gilluly v. Madison*, 63 Wis. 518, 24 N. W. 137; *Hughes v. Fond du Lac, supra;* and *Schroeder v. Baraboo*, 93 Wis. 95, 67 N. W. 27, are cited to this point. In the *Gilluly* and *Schroeder Cases* the structures are not expressly called "nuisances," but they are designated as such in *Matson v. Dane County*, 172 Wis. 522, 179 N. W. 774, and plainly were such.

So far we have dealt only with cases decided by this court. In 38 Am. Jur. p. 355, the general rule is stated that a municipality has no more right to create a nuisance than a private corporation, and that when it does so it is liable for resulting injuries. Many cases are there cited in support of the text. In 75 A. L. R. 1199 is a note stating that a majority of courts hold that in case of the creation or maintenance of a nuisance by a municipality that it is done in the performance of a governmental function does not exempt from liability.

6 McQuillin, Mun. Corp. (1st ed.) sec. 2641, is to the same effect.

There are a few cases from other jurisdictions dealing with liability of municipalities for injuries resulting from maintenance of ball fields. *Hennessy v. Boston,* 265 Mass. 559, 562, 164 N. E. 470, holds that such maintenance, if it creates danger to others, constitutes a nuisance and will be enjoined, but that an action at law does not lie to recover damages for the injury sustained because the city was "not the owner of the playground in any ordinary sense," but "the property is [was] held under the statute and is [was] conducted solely in the public interest and for the general benefit," citing Massachusetts cases, a ground which seems to us untenable in absence of some controlling statute. In *Lane v. Buffalo,* 232 App. Div. 334, 250 N. Y. Supp. 579, the city maintained a playground. Two boys were playing as pitcher and catcher in front of a four-foot wire fence behind the home plate of a ball field. A thrown ball went over the fence and struck a person stepping out of a door of a house on adjacent premises. The case held the city not liable because of lack of sufficient proof that the ball that struck the plaintiff was thrown by the boy playing as pitcher. A dissenting judge was of opinion that the case should have gone to the jury, and that if the ball was thrown by the boy the city was liable. The opinion of the court expressly agrees with the dissenting opinion that the city was liable if the ball was so thrown, on the theory of the New York decisions that in conducting a playground the city is engaged in a corporate, as distinguished from a governmental capacity, citing *Augustine v. Town of Brant,* 249 N. Y. 198, 163 N. E. 732, which involved the case of a boy drowned in a municipal bathing pool.

In *Gleason v. Hillcrest Golf Course,* 148 Misc. 246, 265 N. Y. Supp. 886, a golf club was held liable for injury caused by a golf ball driven by a player striking the windshield of

an automobile being driven along an adjacent highway, as a result of which a person in the front seat of the automobile was injured by a flying piece of broken glass. The club maintained a woven-wire fence six feet high about twenty-five feet from the roadway. The club was held liable both on the ground of maintaining a nuisance and of negligence. The only other case of injury to a traveler on the highway by a driven golf ball is that of *Castle v. St. Augustine Links,* 38 Times L. Rep. (Eng.) 615, which held the club liable on the ground that the club was maintaining a nuisance. The opinion in the *Hillcrest Case, supra,* quotes from *Tinker v. New York, O. & W. R. Co.* 157 N. Y. 312, 318, 51 N. E. 1031:

"The primary purpose of highways is use by the public for travel and transportation, and the general rule is that any one who interferes with such use commits a nuisance."

And further states that "the rights of the public to a free and unmolested use of the highways are paramount," and cites several decisions of the New York court of appeals in support of the statement.

It must be conceded that there is a line of cases by this court that come close to ruling that even though a thing maintained by a municipality constitutes a public nuisance the exemption from liability applies when the nuisance is created in course of performing a governmental function. Such cases are the playground and bathing-pool cases, coasting cases, and the like illustrated by *Schultz v. Milwaukee, supra; Skiris v. Port Washington,* 223 Wis. 51, 269 N. W. 556; *Grinde v. Watertown,* 232 Wis. 551, 288 N. W. 196; *Erickson v. West Salem,* 205 Wis. 107, 236 N. W. 579; and *Virovatz v. Cudahy,* 211 Wis. 357, 247 N. W. 341. All of these cases but two are readily distinguishable. In the *Schultz Case, supra,* a traveler on a public street was injured by a boy coast-

ing on a cross street. The case was up on a demurrer to the complaint for insufficiency of facts stated. The case is distinguishable from the first *Little Case, supra,* on the construction of the complaint, which was construed as not creating a nuisance by licensing it, but merely as permitting it, and thus not liable under the rule of the second *Little Case, supra.* The *Skiris Case, supra,* was up on like demurrer. A boy coasting was injured by striking a sleigh left by the adjoining landowner standing as an obstruction to traffic in the street. The city had set off the street for coasting by blocking the use of an interfering cross street from traffic. The court construed the complaint as stating a case for negligence in not removing an obstruction created by another, as distinguished from creating the nuisance itself, and exonerated the city from liability under the governmental-function rule and exonerated it under sec. 81.15, Stats., which imposes liability for failure to maintain its streets free from defects which endanger travelers on the ground that no notice of injury was served as required in such case. It is to be noted that on page 56 of the opinion the rule of the *Hughes Case, supra,* is recognized as existing. In *Grinde v. Watertown, supra,* the rule is also recognized that liability for the creation of a nuisance by a municipality is not obviated on the ground that it was created in performing a governmental function, but the complaint was construed as not stating the creation of a public nuisance, but as stating negligence of the park employees in not removing a nuisance created by some person or persons unknown in interfering with a slide dismantled by the city to prevent its use and set aside in a proper place and position to be repaired.

The *Virovatz Case, supra,* is not so readily distinguished. The syllabus of the case correctly states the holding of the case as follows:

"Since a city in maintaining a public swimming pool in a municipal park is performing a governmental function as to

a boy bathing therein, the city cannot be held liable to the parents of the boy for his death by drowning, on the ground that it was guilty of maintaining a nuisance."

The opinion quotes at page 360 at length from the opinion in *Folk v. Milwaukee, supra,* wherein it is stated that in none of the cases holding to the rule of the *Hughes Case, supra,* were the agents of the city guilty of the wrongful acts involved acting in a governmental capacity toward the person injured. The only fact that distinguishes the instant case from the *Virovatz Case, supra,* is that here the injured person was traveling on the highway while in the other the injured person was availing himself of a privilege granted him by the city in performance of a governmental function. The instant plaintiff, Marie, was in a situation comparable to that of an adjoining landowner who is injured by a nuisance created by a city. She was not availing herself of the benefit of the instrumentality furnished by the city for the general good, and the relation of governor and governed did not exist between the city and her. As Mr. Justice FRANKFURTER would express it, if we understand him, the "nexus" is absent that is necessary to establish the relationship of governor and governed. The same may be said of the *West Salem Case, supra.* The boy there involved was not a traveler on a highway but was inside a park maintained by the city for the general good, and availing himself of its use. Being inside the park, and availing himself of its use, the city was exercising toward him a governmental function while in maintaining the ball field the instant city was not exercising a governmental function toward the plaintiff Marie. This renders the rule of the two cases last discussed inapplicable to the instant case.

The plaintiffs' contention on the motion for review must be sustained as to the finding of contributory negligence. We perceive no evidence whatever to warrant the jury's finding. The plaintiff Marie was walking on the sidewalk where she

lawfully might walk, and there was nothing to warn her of danger from the batted balls. She had no knowledge that the distance between the fence and the home plate was such as to make it likely or even possible that batted balls might strike the top of the fence, and there was nothing in the situation to make this apparent.. We consider that the court should have granted the plaintiffs' motion to change the answer to the question on contributory negligence from "Yes" to "No," and awarded judgment for the full amount of the damages assessed.

*By the Court.*—The judgment of the circuit court in the case of Marie Robb is modified by changing the amount thereof to $5,145, the full amount of damages assessed by the jury, and affirmed as modified. The judgment in the case of Hubert Robb is modified by changing the amount of his damages to the full amount assessed by the jury and, as so modified, is affirmed.

FAIRCHILD, J. (*dissenting*). To hold that the establishing and maintenance of a playground has resulted in a public nuisance in any sense of the word seems to go beyond the rules of law bearing upon the subject. There may be negligence in failing to build a high enough fence and thus protect passers-by; but a transitory act of a player does not in and of itself change the character of the game and make the park into a public nuisance. It has in it no element of continuing harmful use. The flight of a single ball over a fence concerning which no complaints have been made, with a single exception, although the grounds have been in use for upward of nine years, falls far short of creating a public nuisance, especially where the only previous damage had been to property in the neighborhood and not of a serious character, whereas the injury in question was an injury to the person of a passing pedestrian. I seriously question whether the jury was justified in finding an unreasonable hazard in the nature of a public nuisance.

The state and the city of Milwaukee have by legislation directed the school board to lay out the playground. The board has charge of the grounds and the games. Such laws as this were passed in the public interest with the idea that by providing a suitable and healthful place for citizens to play, benefit might result to those using the playground and also to the citizens of the community by reason of the reduction in rowdyism and crime in the neighborhood, which reduction results from the establishment of such playgrounds.

It is clear that this is a governmental function and therefore that no action can be maintained against the city for negligence in the maintenance of the playground. Were this not true, it seems clear that the present action would have been for the negligence of the city in failing to provide a higher fence. Even if it be concluded that the activity in question does constitute a nuisance, there is still the question of whether, being a governmental function, under the rule of *Virovatz v. Cudahy,* 211 Wis. 357, 247 N. W. 341, the city is liable in damages. The majority seek to distinguish this case by saying that although this is a governmental function, the city was not acting in a governmental capacity toward this plaintiff. This is a distinction which seems to me without merit. The conduct of such recreational facilities, as has been stated, was not solely for the benefit of the participants in the game, but was also to promote the general welfare of the community including that of these plaintiffs. It seems to me that if a function is by nature governmental, it is of that nature regardless of who may be affected by it. 6 McQuillin, Mun. Corp. (2d ed.) p. 773, sec. 2795. In this case, however, the plaintiffs are certainly part of the general public to be benefited by this activity.

Such cases as *Young v. Juneau County,* 192 Wis. 646, 212 N. W. 295, hold in effect that the city under certain circumstances may be liable for the creation of a *private* nuisance. If the majority here were to say that there is similar liability for the creation of a public nuisance, I would have less cause

to disagree. This would involve overruling the *Virovatz Case, supra,* and also *Erickson v. West Salem,* 205 Wis. 107, 236 N. W. 579. To say, however, that this is a governmental function but not as to this plaintiff seems to me a distinction without substance. The very classification of an activity as a governmental function implies an act for the general welfare and is inconsistent with the idea of separating the participants from the general public.

Confining the relation of governor and governed to those inside the playground really puts the case in the field of negligence with users of the playground assuming any risks. For instance, the child in the *Erickson Case, supra,* in effect assumed the risk by being in the park and the boy in the *Virovatz Case, supra,* also assumed the risk by swimming in the pond, although in each case the sewer and the pond were called public nuisances. But if they were nuisances, why was this so? They were nuisances because someone using them in just the ways these children did might be hurt. In the case at bar the nuisance charged is maintaining a ball field with too low a fence. This is called a nuisance because a pedestrian might be injured by a ball. In all three of these cases the city was performing a governmental function and, assuming that in the present case there was a nuisance, in all three one of the class of persons whose interests were especially susceptible to harm by reason of the maintenance of the nuisance was injured. The rule as to liability in the three cases should be the same. If this was a public nuisance, maintained by the city in a governmental capacity, then the city should be liable or not without regard to the position occupied by the injured person.

I cannot agree with the decision as written. I am authorized to say that Mr. Justice FRITZ concurs in this dissent.