POHLAND, Appellant, vs. CITY OF SHEBOYGAN and another, Respondents.

*May 15—June 10, 1947.*

For the appellant there was a brief by *Quarles, Spence & Quarles* of Milwaukee, and *Werner, Clemens & Miller* of Sheboygan, attorneys, and *Kenneth P. Grubb* and *Henry S. Reuss* of counsel, both of Milwaukee, and oral argument by *Mr. Reuss* and *Mr. R. H. Miller.*

For the respondent city of Sheboygan there was a brief by *Joseph W. Wilkus,* city attorney, and *Jacob F. Federer* of Sheboygan of counsel, and oral argument by *Mr. Wilkus.*

For the respondent Hartford Accident & Indemnity Company there was a brief by *Buchen, Currie, Federer, Grote & Hesslink* of Sheboygan, and oral argument by *T. A. Grote.*

FOWLER, J.   The case is before us on separate demurrers to the complaint interposed by defendants city of Sheboygan and Hartford Accident & Indemnity Company.   The ground of the action is that the city maintained a park for the use of its citizens for recreational purposes and maintained therein a toboggan slide; that the plaintiff while using the slide as an occupant of a toboggan was injured by reason of the toboggan running into an abandoned stone quarry situated in the park without barriers or guards to prevent toboggans from so running or posting warnings against the danger of so running; that the quarry without such guards constituted a public nuisance and rendered the city liable for the injuries sustained by the plaintiff, and rendered the Hartford Company liable under an indemnity policy issued by it to the city.   The demurrers both were on the ground of the insufficiency of the facts stated, and the Hartford Company's was on the additional

ground of misjoinder because the Insurance Company's contract is one of indemnity and imposes no liability until after payment by the city or judgment against it. The trial court sustained the demurrers.

The provision of the instant policy, designated as "Owners', Landlords', and Tenants' Liability Policy" is that the insurer agreed to pay on behalf of the city all sums the city should become obligated to pay by reason of "liability" imposed on the city for damages "because of bodily injury . . . caused by accident and arising out of the ownership, maintenance, or use" of the premises described "which were maintained for recreational purposes."

The plaintiff contends that under *Robb v. Milwaukee,* 241 Wis. 432, 6 N. W. (2d) 222, the city is liable for creating a public nuisance. The *Robb Case,* however, is distinguishable because the plaintiff was injured while walking on a public street. The nuisance theory applied in that case was based solely on the fact that the plaintiff was so walking when injured, and on the rule that anything that creates danger to one using a public street is a public nuisance. All the cases cited in support of the holding in the *Robb Case* are such cases. The plaintiff in that case was not availing herself of the instrumentality maintained by the city for the pleasure and benefit of its citizens. The relation of governor and governed did not exist.

The instant plaintiff was availing himself of the slide maintained by the city and the relation of governor and governed did exist. He was in the same position as the boy drowned in the swimming pool involved in *Virovatz v. Cudahy,* 211 Wis. 357, 247 N. W. 341, and the child in *Grinde v. Watertown,* 232 Wis. 551, 288 N. W. 196, who was injured while using a slide for children. This case cannot be wangled under the *Robb Case* by saying that the abandoned quarry being used as a swimming pool was a nuisance to users of the toboggan slide just the same as the ball park was to users of the

adjacent sidewalk. The real basis of the claim for injury here is negligence for not guarding the quarry by a barrier reasonably sufficient to prevent sliding into the quarry and the exemption from liability while in performance of a governmental function applies. *Cegelski v. Green Bay,* 231 Wis. 89, 285 N. W. 343, is directly in point. The plaintiff in that case sought recovery for injuries sustained while using a toboggan slide maintained by the city of Green Bay. The court held that in maintaining the slide for the benefit of its citizens the city was exercising a governmental function, and that the doctrine of nonliability of a municipality for injuries sustained while the city was in the exercise of such function applied. It is contended that the fact that the thing complained of in the *Cegelski Case* was not concealed and did not constitute a "trap" distinguishes the instant case. But the hole in the swimming pool in the *Virovatz Case* that caused the death of the user of the pool was concealed and constituted as much of a "trap" as the thing here complained of and the nuisance theory was in that case expressly rejected.

Counsel for plaintiff relies strongly on *Rogers v. Butler,* 170 Tenn. 125, 129, 92 S. W. (2d) 414, and *Taylor v. Knox County Board of Education,* 292 Ky. 767, 167 S. W. (2d) 700. The Kentucky case is not in point. The Kentucky case is based on a statute authorizing school districts to take out indemnity contracts protecting the drivers of school buses and the district from liability for negligence of the drivers. The statute authorized a district to create a fund for payment of injuries to school children, and the district became liable to the extent of the fund. Before enactment of the statute there was no liability of municipalities for negligence of employees in performance of a governmental function although it had an indemnity policy protecting it from liability arising out of ownership or operation of school buses. *Wallace v. Laurel County Board of Education,* 287 Ky. 454, 153 S. W. (2d) 915.

The Tennessee case is not so readily distinguished. But that case is also based on statutes. The court in its opinion concedes that in operating its schools the defendant county was exercising a governmental function, and that ordinarily it would not be liable for negligence of its agents and employees in carrying on such a function. It bases its ruling of liability on two statutes. One authorized the county board of education to transport pupils to and from school; the other provided that the board might require the drivers of the vehicles so used "to make bond in the amount of not less than $500 for the faithful performance of the duties that the position imposes." The opinion states that due care is required of a driver in the operation of the vehicle he is driving, and that "such care is inseparable from 'faithful performance' of such duties." The county "had taken out an insurance policy to protect itself and its employee Rogers from liability on account of accidents" such as were involved. The opinion holds that—

"A bond taken to secure due care on the part of a driver is but a mode of insuring against the consequences of his negligence. It is immaterial that the obligation taken be in the form of a liability insurance policy. Either instrument serves the purpose of the statute. Either is within the authority of the county board of education."

The court then goes on to hold that, while the county is not liable for the injuries inflicted by the negligence of the driver of a bus it may supply a fund by taking out insurance out of which when collected it may be required to pay, to the extent of the fund, for injuries negligently inflicted by its drivers. The statute there involved does not expressly authorize the board of education to take insurance nor does it expressly create any liability on the part of the county for the amount of the fund. The reasoning of the rule of liability imposed by the court is that as the county is empowered to require the driver to give security, and thereby authorized to provide se-

curity, it may provide such security by taking out insurance to provide it, and to the extent that it so provides a fund to secure payment of the employees' liability it must itself respond. We have no statute authorizing a city to make its employees give bond to secure their exercise of due care in the performance of their duties except in case of handling money and perhaps the keeping of property. We consider that in absence of statutory authority for doing the thing on which the Kentucky court bases its rule of liability we cannot impose liability upon the city, and the city not being liable the insurance company under its policy is not liable. This court has uniformly refused to change the common-law rule of municipal nonliability for negligence in performing governmental functions in the absence of a statute changing that rule. We adhere to the course uniformly heretofore adopted.

The plaintiff also contends that sec. 66.18, Stats., authorizes the making of the instant contract and renders the Hartford Insurance Company and city both liable. The statute only authorizes procuring insurance to protect the city and its officers, agents, and employees from liability. As there is no liability on the part of the city here under the *Virovatz Case, supra,* and others above mentioned, the statute does not apply. The cases in Wisconsin wherein liability was imposed for negligence of employees in performance of governmental functions have been cases of drivers of municipally operated trucks. *Koepke v. Sass,* 239 Wis. 291, 1 N. W. (2d) 145; *Plautz v. Kubasta,* 237 Wis. 198, 295 N. W. 667; *Schumacher v. Milwaukee,* 209 Wis. 43, 243 N. W. 756. These cases are not in point because they were decided after the adoption of sec. 66.095, Stats., which was adopted by ch. 77, Laws of 1929, and expressly authorizes taking out insurance to cover accidents caused by negligence in operation of city owned vehicles, and which was construed in the *Schumacher Case,* above cited, to apply when the vehicles are engaged in performance of governmental functions.

The circuit court ruled that the city had no right to make an indemnity contract unless necessary for its protection, citing *H. Hohensee C. Co. v. Chicago, M., St. P. & P. R. Co.* 218 Wis. 390, 261 N. W. 242, which he says by implication so holds. While that case only holds that a city may make an indemnity contract when for its benefit or advantage, we think his holding is correct. No statutory city power is pointed out, no adjudicated cases are pointed out, as authority in support of the theory that the city can make an indemnity contract except so far as is necessary for its own protection. The instant policy plainly applies to protect the city against negligence of its employees while operating in a proprietary capacity, and, as above indicated, under sec. 66.095, Stats., while driving city owned vehicles in performing governmental functions. It also applies in any case to protect the city against expense of defending baseless actions to recover damages for negligence of its employees in all cases. But we perceive no authority for making a contract to indemnify anyone but the city or its employees when the latter is authorized by statute. The policy is therefore invalid as a contract for the benefit of the plaintiff as a third party as claimed by plaintiff.

The plaintiff also contends that the city and the insurer are estopped from asserting the defense that the injuries involved were sustained while the city was engaged in the performance of a governmental function, because of an express agreement in the policy in suit that neither would assert such defense in an action to recover for negligence of employees of the city.

As to the city, the city has no power except such as is conferred on it by statute, and such as is necessary to the exercise of a power so conferred. No statute is pointed out as conferring the power to make the agreement referred to, and none is pointed out from which the power to make that agreement is necessary. We know of no statute conferring or authorizing the exercise of such power. No adjudicated cases are cited

as authorizing such power.    We consider that the proposition contended for is not tenable.

As to the Insurance Company the policy is one of indemnity. The company is not liable unless the city is.    The city not being liable the company is not.

*By the Court.*—The order of the circuit court is affirmed.