BRITTEN, by Guardian, and another, Respondents, vs. CITY OF EAU CLAIRE and another, Appellants.

*December 4, 1951—January 8, 1952.*

For the appellant city of Eau Claire there was a brief by *Ramsdell, King & Carroll* and *James C. Herrick,* all of Eau Claire, and *David F. Nordstrom,* city attorney, and oral argument by *Mr. Bailey E. Ramsdell* and *Mr. Nordstrom.*

For the appellant General Accident Fire & Life Assurance Corporation there was a brief by *Stafford & Stafford,* attorneys, and *Robert F. Pfiffner* of counsel, all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

For the respondents there was a brief by *Frank E. Betz* and *Wilcox & Sullivan,* all of Eau Claire, and oral argument by *Mr. Betz* and *Mr. Francis J. Wilcox.*

GEHL, J.   The city contends that at the time in question it was engaged in carrying on a governmental function and that therefore it is not liable.  As appears from the verdict the case was tried upon the theory that the injury resulted from the maintenance of an attractive nuisance.  The attractive-nuisance doctrine as it is applied in Wisconsin generally, without particular reference to municipalities, is that one who "leaves an instrumentality or premises where children have a right to be or where children by reason of their childish instincts are likely for some apparent reason to be attracted" must "exercise ordinary care under all the circumstances to prevent injury to children." *Routt v. Look,* 180 Wis. 1, 8, 191 N. W. 557.

The city's employee had had previous experience with this machine to indicate to him that it was attractive to children; he had been warned against danger of injury to children

unless proper precautions were taken; he had seen children about the area during the day in question and had been instructed to leave the gate down or disconnect the controls. These are circumstances to permit the application of the doctrine of attractive nuisance. *Angelier v. Red Star Yeast & Products Co.* 215 Wis. 47, 254 N. W. 351.

The city does not argue strenuously against the rule as we have stated it, nor would it, if we understand its position correctly, urge its inapplicability in this case if the actor were a nonpublic agency. It contends, however, that the rule that a municipal corporation is not liable for the negligence of its employees while engaged in carrying on a governmental function is applicable. The rule has long been recognized in Wisconsin. *Pohland v. Sheboygan,* 251 Wis. 20, 27 N. W. (2d) 736. It does not appear, however, from any case which has been called to our attention, nor from our own search, that the question whether a municipality may be held accountable under the attractive-nuisance doctrine and under circumstances as are present here has been determined by this court.

The doctrine of attractive nuisance does not apply to municipal corporations when the act creating the instrumentality is performed in the exercise of a governmental function. It does, where it is created when the municipality operates in a proprietary capacity. 38 Am. Jur., Municipal Corporations, p. 283, sec. 588. So it becomes necessary to determine whether the city in parking the tractor and scraper off the street after completing the day's work of grading for sidewalk and boulevard improvement was engaged in a governmental or a proprietary capacity.

The doctrine that immunity from liability should be granted to the state and municipalities while engaged in governmental operations rests upon a weak foundation. Its origin seems to be found in the ancient and fallacious notion that the king can do no wrong. The rule is one of such long

standing and has become so firmly established as a parcel of Wisconsin's jurisprudence, however, that we should hesitate to abandon it. We consider that if it is to be abandoned it is only proper that the request therefor should be made to the legislature. But we do consider that the precedent, lacking support in both logic and reason, should not be so construed as to extend the exemption beyond the boundaries of its previous application. And, since we are not foreclosed by any former decision of this court to consider the direct question before us as a novel one and since none of the precedents disclose a state of facts similar to those which we have for consideration, we conclude that when the city of Eau Claire parked its equipment after completing the day's work it was functioning in its proprietary capacity and therefore subject to the same rules as to liability for the maintenance of an attractive nuisance as is a nonpublic agency.

Our conclusion is not without precedent. In a case strikingly similar in its facts the supreme court of Pennsylvania permitted recovery where it appeared that a road scraper had been parked by a city's employees at the end of their day's work on a vacant lot not belonging to the city, close to a street. The city's employees had notice of the fact that the scraper was an attraction to children, and a seven-year-old boy while playing on the machine was injured when he turned one of the wheels and his hand was caught in the cogs on one of the flywheels. The court reached the result which it did in face of the rule applicable in Pennsylvania that in the construction and maintenance of streets a municipality is acting in its governmental rather than its business capacity. *Reichvalder v. Taylor,* 322 Pa. St. 72, 185 Atl. 270.

The defendant, General Accident Fire & Life Assurance Corporation, had issued to the city a policy of insurance by the terms of which it undertook to pay on behalf of the city such sums which the latter should be obliged to pay by reason of the liability imposed by law for bodily injury

liability arising out of the *ownership*, maintenance, or use of
its vehicles. The insurer contends that so far as the equipment
here involved is concerned, its liability is limited by the fol-
lowing provisions of the policy:

"The word 'automobile' shall mean a land motor vehicle,
tractor, or semitrailer, provided the following described
equipment shall not be deemed an automobile except while
towed by or carried on a motor vehicle not so described:
Any crawler-type tractor, farm implement, farm tractor, or
trailer not subject to motor vehicle registration, ditch or
trench digger, power crane or shovel, grader, scraper, roller,
well-drilling machinery, asphalt spreader, concrete mixer, and
mixing and finishing equipment for highway work, other
than a concrete mixer of the mix-in-transit type. The word
'trailer' shall include semitrailer.

"It is agreed that such insurance as is afforded by the
policy for bodily injury liability, for property damage liabil-
ity and for medical payments applies with respect to owned
automobiles subject to the following provisions:

"1. Definitions. The words 'owned automobile' shall
mean a land motor vehicle, trailer or semitrailer owned by
the named insured, provided the following-described equip-
ment shall not be deemed an automobile except while towed
by or carried on a motor vehicle not so described: Any
crawler-type tractor, farm implement, ditch or trench digger,
power crane or shovel, grader, scraper, roller, well-drilling
machinery, asphalt spreader, concrete mixer, mixing and
finishing equipment for highway work, other than a concrete
mixer of the mix-in-transit type and, if not subject to motor
vehicle registration, any equipment used principally on prem-
ises owned by or rented to the named insured, farm tractor
or trailer. The word 'automobile' wherever used in the
policy with respect to the insurance afforded under this in-
dorsement, shall include 'owned automobile.' "

It is urged that the use of the crawler-type tractor, since
it was not at the time being towed or carried on a motor
vehicle, was not such as to render it liable under the terms
of the policy.

The equipment in the use of which the city is to be indemnified is described only in an indorsement attached to the policy. It contains a list of seventy-six vehicles indicating in each case the charge for coverage with respect to each, and describes the tractor here involved. It is not necessary to concede that an ambiguity exists between the quoted portions of the body of the policy and the contents of the indorsement. The entire contract evidences a purpose to indemnify the city by reason of its liability arising out of its ownership, maintenance, and use of the vehicles described in the indorsement. Evidence thereof is found in the provisions of other indorsements,—

". . . insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges;" "The premium basis for this insurance is per automobile."

The corporation listed the tractor as an automobile, accepted a premium therefor and thereby indemnified the city on account of its liability for its ownership.

If there were ambiguity the language of the entire contract should have to be construed most strongly against the insurer. *Vaudreuil Lumber Co. v. Aetna C. & S. Co.* 201 Wis. 518, 230 N. W. 704. The matters contained in the indorsement should control the construction of the provisions of the body of the policy, 44 C. J. S., Insurance, p. 1205, sec. 300.

The liability of the insurer is not controlled or determined by the provisions of the statutes to which the insurer refers; its obligation arises from the terms of its contract with the city which require indemnification not only in the case of the operation of the vehicle but also from its ownership and maintenance thereof.

The scraper is not specifically described in the policy or in the indorsement. It is attached to the tractor and cannot be operated without the connection with and the power pro-

vided by the tractor. It is, in fact, a part of a single unit which was put into operation so as to cause the plaintiff's injuries by the movement of the lever on the tractor. The brother's operation upon the tractor was as much the cause of plaintiff's injuries, as was the latter's presence under the scraper.

The plaintiff, upon motion to review, contends that the court erred in refusing to set aside the jury's finding of negligence on his part. The trial judge gave adequate instructions respecting the duty of plaintiff, a boy six years and two months of age, to avoid the injury. He said:

". . . you are instructed that although a child, he may be found negligent if from all the facts and circumstances it appears from his age, capacity, discretion, knowledge, and experience that he knew or ought to have known of the danger involved in his acts, and, in the exercise of such ordinary care as he should have exercised, he could have avoided the injury. Children are not held to the same degree of care as are adults. The care required of them is dependent upon their age and experience. The plaintiff Bruce Britten is to be held to that degree of care which is ordinarily exercised by children of ordinary care and prudence of his age and experience and intelligence and to foresee what a child of his age, experience, and intelligence would ordinarily foresee under like circumstances."

Counsel stresses the point that plaintiff was unfamiliar with this kind of machinery; that he had not been instructed as to the dangers connected with it; that he was in the company of an older brother; that the injury resulted from the act of the older brother who was not in his view, and that he had been told by his mother to remain at home. We have held that an infant's experience and teaching may be considered in determining whether he is negligent and that, lacking the experience and teaching, we should under the circumstance existing absolve him as a matter of law. We do not consider it necessary to discuss the details of these cases. If any general rule may be read out of them it is only that each

case involving the conduct of a child of tender years must be considered upon its peculiar facts. We have held that children younger than Bruce may, under certain circumstances, be found to be guilty of negligence. *VanLydegraf v. Scholz,* 240 Wis. 599, 4 N. W. (2d) 121; *Zeise v. Deprey,* 252 Wis. 316, 31 N. W. (2d) 523. While it is true that a child of tender years may not be charged with knowledge of statutory rules of conduct, as were considered in *VanLydegraf v. Scholz, supra,* and similar precepts, still the jury was warranted in determining, even in the absence of warning and lacking familiarity with a machine of this character, that in exposing himself to the danger of playing about this equipment he did not exercise the degree of care which is ordinarily exercised by children of his age, experience, and intelligence. The issue of plaintiff's negligence was properly submitted to the jury.

*By the Court.*—Judgment affirmed. Motion to review denied.