FLAMINGO, Special Administrator, Appellant, vs. CITY OF WAUKESHA, Respondent.*

*September 16—October 7, 1952.*

* Motion for rehearing denied, with $25 costs, on December 2, 1952.

For the appellant there was a brief by *James D'Amato* and *Ray J. Aiken,* both of Waukesha, and oral argument by *Mr. D'Amato.*

*William G. Callow,* attorney, and *Richard S. Hippenmeyer* of counsel, both of Waukesha, for the respondent.

BROWN, J. It is well settled that the maintenance of streets and highways in a condition fit for travel is a governmental function. *Bruhnke v. La Crosse* (1914), 155 Wis. 485, 144 N. W. 1100; *Stoehr v. Red Springs* (1928), 195 Wis. 399, 216 N. W. 487, 219 N. W. 98; *Larsen v. Kewaunee County* (1932), 209 Wis. 204, 244 N. W. 578. It is also a governmental function for a city to maintain a dump for the disposal of unwanted material.

"While diversity of judicial views still prevails, late cases generally hold, with some exceptions, that the functions of cleaning of streets, the collection of garbage, and the establishment and maintenance of dumping grounds and incinerators are governmental, rather than proprietary, exercised by the municipality as an administrative agency of the state or for the public in the interest of the public health and general welfare, and hence, negligence relating thereto creates no

municipal liability, unless, in the exercise of such power a nuisance in fact is thereby created and maintained by the municipality, . . ." 18 McQuillin, Mun. Corp., p. 267, sec. 53.46. See also *Bruce v. Kansas City* (1929), 128 Kan. 13, 276 Pac. 284, and Anno. 63 A. L. R. 332.

Of course it cannot be held that in dumping the snow between the street and the river, where it did not interfere with travel on the highway, the city created or maintained a public nuisance or a nuisance in fact. The plaintiff, therefore, relies on the doctrine of attractive nuisance. Assuming, but not holding, that a boy of ten years is young enough to come within the protection of that doctrine when the other facts make the doctrine applicable, it is inapplicable here because the snow pile was created and existed in the defendant's performance of a governmental function.

"The doctrine of attractive nuisance . . . can have no application in cases in which the negligence occurred or the attractive condition was created in the exercise of a governmental function." 38 Am. Jur., Municipal Corporations, p. 283, sec. 588, cited in *Britten v. Eau Claire* (1952), 260 Wis. 382, 51 N. W. (2d) 30.

It has been urged upon us that Wisconsin precedents have modified the rule of municipal immunity so that now a municipality is responsible for the negligent acts of its officers or servants even in the performance of a governmental function unless it appears that at the time of injury the injured party was enjoying some privilege extended to him by the municipality which embraced or included the defective condition or negligent conduct, so that between the parties the relationship of governor to governed existed. We do not consider that the authorities sustain the argument.

In *Erickson v. West Salem* (1931), 205 Wis. 107, 236 N. W. 579, a child playing in a public park was drowned in a sewer negligently constructed and maintained there by

the city. In holding that the city was not liable, Mr. Justice NELSON said (p. 109):

"The law is established by numerous decisions of this court that a municipal corporation, such as a city or village, is not liable for the negligence of its officers or servants when engaged in the performance of a governmental function *or* when the relation between the person injured and the municipality is purely governmental in its nature." (Emphasis supplied.)

It is important to note that the reasons for denying liability are alternative; disjunctive and not conjunctive. If the city's function is governmental it is not liable for the negligence. If by its performance it creates a nuisance in fact, the city cannot defend by showing its governmental purpose but it may still escape liability by showing that the injury was suffered by one whose relationship to the city was, at that time, governmental.

In *Folk v. Milwaukee* (1900), 108 Wis. 359, 364, 84 N. W. 420, we stated that ". . . a municipal corporation may not construct or maintain a nuisance in the street. . . ." Accordingly, in *Robb v. Milwaukee* (1942), 241 Wis. 432, 6 N. W. (2d) 222, where the jury had found that the presence of a municipal playground made the street unsafe, we held that the playground constituted a nuisance and allowed recovery to a pedestrian on the sidewalk who was struck by a ball batted into the street. The governmental-function defense did not avail the city because by its playground it created and maintained the hazard to the street traffic,— the nuisance,—and the relationship between the parties was not that of governor and governed because the pedestrian was not using the playground. In *Virovatz v. Cudahy* (1933), 211 Wis. 357, 247 N. W. 341, the nuisance existed but the person harmed had no right of action because he was enjoying the facilities of the swimming pool which contained the defect. We said (p. 360):

"Thus, it is apparent that the right to recover from a municipality, for injuries sustained because of its creation or maintenance of a nuisance in its governmental capacity, does not exist in favor of a person toward whom the municipality was likewise acting in its governmental capacity."

In *Holl v. Merrill* (1947), 251 Wis. 203, 28 N. W. (2d) 363, the county maintained a jail and jail yard, and in so doing undermined the city sidewalk so as to make it unsafe, whereby the plaintiff was injured. We held that the active interference by the county with the city sidewalk created a nuisance, so that the governmental-function defense was not available to the county and, as the plaintiff was not taking advantage of any county facilities which included the nuisance, neither did the county have the defense of a governmental relationship between the parties. A cause of action existed, therefore, against the county.

In the case of *Matson v. Dane County* (1920), 172 Wis. 522, 179 N. W. 774, upon which plaintiff relies, liability was expressly based upon the duty which the county owed, as an adjoining landowner, to the plaintiff, and upon no other ground. Therefore, the county was held liable because of its proprietary, not its governmental nature. The present facts do not permit the use of that case to establish liability here.

Enough has been said, we think, to demonstrate that Wisconsin municipalities avoid liability for damage caused by their negligence in carrying out governmental functions where they have not created a nuisance in fact, and even where such a nuisance has been created, liability is not imposed if the relationship of governor and governed exists between the municipality and the injured party. That relationship was not present in the instant case, but on the facts alleged in the complaint no nuisance in fact was created or maintained, and there appears to be nothing which can take the case out of the general rule that the city is not liable for the

negligence of its agents in carrying out a governmental function. We must say then, as we have said before in *Erickson v. West Salem* and *Britten v. Eau Claire, supra,* that if it is desirable to change the established law so as to impose greater liability upon municipalities for negligence in carrying out governmental functions, the legislature and not the courts should make the change.

Appellant has also contended that the city deposited snow upon the river bed contrary to the provisions of secs. 30.02 (1) (b) and 31.25, Stats., quoted as follows:

30.02 (1) (b) "It shall be unlawful to deposit any material . . . upon the bed of any navigable water . . . beyond such shore line. . . ."

31.25 "Every dam, bridge, or other obstruction constructed or maintained in or over any navigable waters of this state in violation of . . . chapter 30, . . . is hereby declared to be a public nuisance, . . ."

The complaint alleges that the snow was deposited upon the city property and extended over the water. It does not allege that anything was deposited on the river bed, or that the river is navigable or that navigation was obstructed, or that the deposit was unlawful or without a permit granted by the state. The argument that the city violated the statute and thereby created and maintained a nuisance which caused the death of a person not standing in a governmental relationship to the city is one that cannot be made from the allegations of this complaint.

We conclude that the demurrer was well taken and the order sustaining it must be affirmed.

*By the Court.*—Order affirmed.

CURRIE, J. (*concurring*). The decision in this case, on the issue of governmental immunity of the defendant city, turns on the very narrow point that an "attractive nuisance" is not a true nuisance.

If the liability of a municipal corporation for an attractive nuisance resulting in injury to a child of tender years was the same as its liability for maintaining an ordinary nuisance, then as pointed out in the majority opinion, there would be no immunity, because the relationship of governor and governed did not exist in the present case. The decisions in *Robb v. Milwaukee* (1942), 241 Wis. 432, 6 N. W. (2d) 222, and *Holl v. Merrill* (1947), 251 Wis. 203, 28 N. W. (2d) 363, clearly establish that a municipal corporation is liable for personal injuries resulting from a nuisance created by it in performance of a governmental function if the relationship of governor and governed does not exist between the municipal corporation and the party injured. The relationship of governor and governed exists where the party injured at the time of injury was enjoying the benefit of a particular governmental activity which resulted in the injury. *Erickson v. West Salem* (1931), 205 Wis. 107, 236 N. W. 579, and *Pohland v. Sheboygan* (1947), 251 Wis. 20, 27 N. W. (2d) 736, are typical cases in which the relationship of governor and governed did exist, as each of the injured parties in both cases was enjoying the benefit of the use of a park area maintained by the defendant city when injured as the result of defects in the premises resulting from the particular governmental activity whose benefits he was enjoying.

In the instant case the governmental activity resulting in creating the alleged dangerous condition was either that of cleaning the streets or maintaining a public dump. Patrick Flamingo, the deceased, was not enjoying the benefits of either of those activities at the time and place of his drowning, so that no relationship of governor and governed existed.

It is only in the cases in which liability is predicated on the maintenance of a nuisance that this court has enforced the exception to the rule, that a municipal corporation is not liable for injuries resulting from a function performed in its

governmental capacity, as distinguished from its proprietary capacity, by imposing liability if the relationship of governor and governed does not exist. This exception to the general rule does not apply in cases where liability is predicated upon negligence alone, as distinguished from nuisance.

The question, then, which faces the court in the instant case is whether this exception should be extended to cases of "attractive nuisance," or whether it should be limited strictly to cases where the liability is based on a true nuisance.

The use of the term "attractive nuisance" has often been criticized as not being a correct descriptive term.

In *New York, N. H. & H. R. Co. v. Fruchter* (C. C. A. 1921), 271 Fed. 419, 421, it was stated:

"It is too obvious to need comment that the court below treated the claim in suit as covered by what are known as the 'attractive nuisance,' 'lure,' or 'trap' cases.

"(1) Since, so far as the courts of the United States are concerned, these cases are all assumed to rest on *Railroad Co. v. Stout*, 17 Wall. 657, 21 L. Ed. 745, *the word 'nuisance' is inappropriate.* A nuisance is that which 'unlawfully worketh hurt, inconvenience, or damage,' and neither the turntable of the *Stout Case* nor the electric wire here to be considered was a nuisance; both were lawful enough. But many a lawful thing may be so negligently managed, handled, or maintained as to give rise to causes of action in tort. The true doctrine is that any composition of matter which lures or attracts the confiding ignorance of childhood to its own harm must be safeguarded as circumstances require, and of course the circumstances vary in almost every instance." (Emphasis supplied.)

Prosser, Torts, p. 618, sec. 77, also criticizes the use of the term "attractive nuisance" and states:

"Accordingly, two thirds of the American courts have developed a doctrine, which has been sadly miscalled by the name of 'attractive nuisance,' making the occupier of land liable for conditions on it which are highly dangerous to trespassing children."

Sec. 339, Restatement, 2 Torts, p. 920, is entitled, "Artificial Conditions Highly Dangerous to Trespassing Children," and sets forth the principles of law applicable in cases ordinarily embraced within the "attractive-nuisance" doctrine, but the text of this section carefully avoids the use of the term "attractive nuisance." A reasonable inference from this would be that the Committee on Torts of the American Law Institute which drafted the Restatement of the Law of Torts disapproved of the use of the term.

Both American Jurisprudence and Corpus Juris Secundum treat the subject of "attractive nuisance" under the title, "Negligence," rather than the title, "Nuisances," which is indicative that the editorial staffs of these two leading legal encyclopedias consider that the principles of the law of attractive nuisance are based on the theory of negligence rather than of nuisance.

It therefore seems clear that liability for an attractive nuisance is but a phase of the liability for negligence. Inasmuch as this court has never recognized any exception to the general principle that a municipal corporation is not liable for injuries resulting from negligence in the performance of activities in its governmental capacity, except where a true nuisance is created, we would be engaging in an act of injudicious judicial legislation if we were to extend the exception recognized in nuisance cases to this case. While this court has on a number of occasions criticized this rule of immunity applicable to municipal corporations as being archaic and not consistent with the principles of fundamental justice, nevertheless, we also have repeatedly declared that it is the function of the legislature and not of this court to abolish the rule.