Lloyd and wife, Respondents, vs. Chippewa County, Appellant.*

*November 4—December 1, 1953.*

* Motion for rehearing denied, with $25 costs, on February 2, 1954.

For the appellant there was a brief by *Vance L. Sinclair,* district attorney, and *Marshall A. Wiley* of Chippewa Falls of counsel, and oral argument by *Mr. Sinclair.*

For the respondents there was a brief by *Stafford, Pfiffner & Stafford* of Chippewa Falls, and oral argument by *Harold E. Stafford.*

CURRIE, J. The plaintiffs contend that they are entitled to recover from the defendant county the damages sustained by them as a result of the basement of their home being flooded, thereby necessitating the removal of themselves and their family from such home, on the following two grounds:

(1) That said damages were the result of breach of the contract contained in the grant of easement executed by the Mitchells to the county under date of May 27, 1939; and

(2) That independently of contract the accumulation of said water around plaintiffs' house was the result of actionable negligence on the part of the county.

The alleged breach of contract on the part of the county is based upon the clause in the May 27, 1939, grant of easement under which the county undertook to "construct and maintain a shallow open ditch from the present culvert beneath Highway 53 in front of the residence on said above-described land [the present farm of plaintiffs] in a south-westerly direction approximately four hundred (400) feet to an intersection with the northerly ditch of County Trunk Highway 'S' to facilitate the flow of water accumulating about the buildings on said farm into said storm sewer."· The storm sewer referred to is the underground concrete sewer running westward to Duncan creek, the east end of which was several hundred feet to the west of the point where the shallow open ditch referred to in the grant of easement met the northerly ditch of Highway S.

The shallow open ditch referred to in the above-quoted clause had been constructed by the county across the south-east corner of plaintiffs' farm. The alleged breach on the part of the defendant county is a failure to *"maintain"* such private ditch. Such alleged breach consists of the fact that the snowplow used by the county in clearing the snow from off Highway S had pushed snow into the open northerly ditch so as to clog such ditch and the entrance of the underground storm sewer. There is a serious question as to

whether such act constituted a failure to *"maintain"* the shallow open ditch across plaintiffs' land, as no snow had been pitched directly by the snowplow into such private ditch. However, for the purpose of this opinion we will assume that the obligation attempted to be imposed by the easement agreement upon the county to *"maintain"* the private ditch across plaintiffs' land included the keeping open of the northerly ditch along Highway S and the entrance to the storm sewer so that the water entering the shallow ditch would be drained off through the northerly ditch of Highway S and the storm sewer.

This brings us to the point advanced by the defendant county that the provision in the easement agreement requiring the county to construct and maintain such private ditch across plaintiffs' farm was invalid and unenforceable against the county. The purpose of the shallow ditch which the county undertook to construct and maintain across the farm now owned by plaintiffs is set forth in the easement agreement of May 27, 1939, as being *"to facilitate the flow of water accumulating about the buildings on said farm into said storm sewer."* Such objective to be accomplished by this shallow ditch is clearly for a private and not a public purpose. There is no evidence in the record that such shallow ditch constituted an integral part of the WPA project or performed any function other than that stated in the easement agreement.

The expenditure by a county of public funds for a private purpose is unconstitutional and void. *Heimerl v. Ozaukee County* (1949), 256 Wis. 151, 40 N. W. (2d) 564. Counsel for plaintiffs have pointed to no specific statute which authorizes a county to make a contract binding it to perpetually maintain and keep open a ditch across private lands for the benefit of the landowner and not the public; and any statute which attempted to so delegate such power to a county, or

an agency of the county such as a county highway committee, would be unconstitutional.

Plaintiffs' counsel, in their brief, contend that a municipal corporation, such as a county, may ratify an agreement invalidly made so as to make the same binding upon it, or by its acts be estopped to deny liability, and cite authorities in support of such contention. However, this doctrine applies only where the agreement was one which the municipal corporation was authorized to make in the first place, and not to a contract which it had no power to enter into. The rule on this point is well set forth in 14 Am. Jur., Counties, p. 213, sec. 45, as follows:

"It is a general principle that whenever a county has power originally to do a particular thing, it also has the power to ratify and make valid an attempted effort to do such thing, although the same may have been done defectively, informally, and even fraudulently, in the first instance. *If, however, a contract made is illegal, or not warranted by law, and is beyond the powers of the county, however beneficial it may be, the public ought not to be estopped to deny its validity.*" (Emphasis supplied.)

The act of the county in accepting the benefit of the easement agreement by laying the storm sewer pursuant to the right granted to it to do so does not estop the county from asserting the invalidity of the covenant imposed upon it to maintain the open private ditch across plaintiffs' land. Such is by implication the holding of this court in *Hyde v. Supervisors of Kenosha County* (1877), 43 Wis. 129. In that case it was alleged that the county had made an agreement with the purchasers of tax certificates to refund on demand the money paid plus interest, if the certificates became void through the neglect or failure of county officers so that the purchasers would be prevented thereby from acquiring a perfect title to the lands. The court held that "any such

special contract would be in excess of the authority conferred upon the board by statute, and would not bind the county" (p. 138). The result of such decision was that the county, which had received and retained the benefits of such transaction in the form of the moneys paid by the purchasers for the tax certificates, was permitted to assert the invalidity of that part of the agreement which placed an obligation upon the county to refund such purchase price under certain conditions.

In *Lewis v. Petroleum County* (1932), 92 Mont. 563, 565, 17 Pac. (2d) 60, 61, 86 A. L. R. 575, 577, the Montana court stated:

"If a party assumes to deal with a county on the supposition that it possesses powers which it does not in fact possess, he will not be allowed to recover, even though he has performed his part of the contract. (. . . Cooley, Constitutional Limitations (7th ed.), p. 272.)"

Plaintiffs further contend that irrespective of any cause of action they may have to recover their damages based on the theory of breach of contract, they are entitled to recover such damages on the ground of negligence.

The defense of immunity of the county based upon governmental function is not available in the instant case under the decision of this court in *Matson v. Dane County* (1920), 172 Wis. 522, 179 N. W. 774. In that case the court held that, while the maintenance of a public highway by a county may be a governmental function with respect to the rights of the public traveling thereon, it is not such a function with respect to injuries thereby occasioned to the owners of adjoining property, and as to such adjoining owners the county acts in a proprietary capacity. In the *Matson Case* the court also held that a nuisance was created. Likewise in the case at bar, if plaintiffs' lands were flooded due to fault of the defendant county, we would also be confronted with a nui-

sance. In case of liability grounded upon nuisance there is no defense of immunity based upon performance of a governmental function available to the county where, as here, the relation of governor and governed did not exist between the county and the plaintiffs. *Holl v. Merrill* (1947), 251 Wis. 203, 207, 28 N. W. (2d) 363.

We are here concerned with surface waters. At common law there is no liability on the part of a landowner, who, as a result of an obstruction placed on his premises, causes surface waters to back up onto the lands of his neighbor. 56 Am. Jur., Waters, p. 552, sec. 69. This common-law rule has been recognized as prevailing in this state. *Hoyt v. Hudson* (1871), 27 Wis. 656, 9 Am. Rep. 473; *Chicago, B. & Q. R. Co. v. Railroad Comm.* (1929), 199 Wis. 342, 226 N. W. 286. In *Merkel v. Germantown* (1904), 120 Wis. 494, 497, 98 N. W. 210, this rule was held applicable to acts of a town board in obstructing the flow of surface waters as a result of the making of highway improvements, wherein the court declared:

"For the purposes of improving its highways, a town has the same right to divert and obstruct the natural flow of mere surface water that the owners of private property have in improving their lands."

The attorney general has ruled that the principle announced in *Merkel v. Germantown, supra,* is applicable to other municipal corporations such as counties. 26 Op. Atty. Gen. 498.

In the instant case liability is sought to be asserted against the defendant county for an act of maintenance of a public highway, viz., snow removal, as a result of which snow was pushed into the northerly ditch of Highway S thereby obstructing the flow of water through such ditch into the underground storm sewer. However, we can perceive no distinction between an act of highway construction, and one of highway maintenance, which results in obstructing the

flow of surface waters. Therefore, independently of statute, there would be no liability on the part of the defendant county on the theory of negligence.

The only statute which would seem to have any application is sec. 88.38, Stats., which provides in part as follows:

"(1) Whenever any county . . . shall have heretofore constructed and now maintains or hereafter shall construct and maintain any public highway or road grade . . . across any . . . natural depression over or *through which surface water naturally flows* and percolates, and the stopping of the said flow and percolation of said water by said highway or road grade causes any crop or land to be flooded, water-soaked, or otherwise damaged, such county, . . . shall construct, provide, and at all times maintain a sufficient ditch or ditches, culverts, or other outlets to allow the free and unobstructed flow and percolation of said water from said lands, and to prevent said lands from becoming flooded, water-soaked, or otherwise damaged by said water. . . .

"(2) Any county . . . which shall fail to provide such necessary ditches or culverts or other outlets shall be liable for all damages caused by reason of such failure or neglect." (Italics supplied.)

The water which flooded the basement of plaintiffs' home got there in the first place because Highway 53, as it passes in front of plaintiffs' premises is built on a fill which acts as a dam which prevents surface waters from flowing in their natural course southeastward across such highway, the four-foot culvert underneath such highway not having sufficient capacity at times of high water to allow it to drain off all of the water which comes down along the west side of the highway. Highway 53 is a federal highway and as such is part of the state's trunk highway system, and maintenance thereof rests upon the state. Sec. 84.07, Stats. There is no liability on the part of the defendant county for damage done as the result of backing up of water due to the inadequacy of the culvert installed under Highway 53, inasmuch as the duty to

maintain said highway is upon the state and not upon the county. *Leininger v. Pierce County* (1938), 226 Wis. 515, 277 N. W. 187; and 29 Op. Atty. Gen. 378.

While the construction of Highway 53 on a fill, together with the inadequacy in times of high water of the four-foot culvert, were the causes of the surface waters flooding plaintiffs' land, it is contended that the actual damage resulted from the fact that the northerly ditch of Highway S was clogged with snow as a result of an act of highway maintenance thereby preventing said waters from being drained off through such ditch into the storm sewer. However, recovery for such damages cannot be predicated upon sec. 88.38, Stats. Said statute has reference only to a situation where the highway, or maintenance of it, prevents the natural flow of surface waters. *Gibeau v. Pratt* (1950), 256 Wis. 617, 42 N. W. (2d) 286. Prior to the installation of the underground storm sewer in 1939, any surface waters that accumulated on plaintiffs' farm had no drainage westward into Duncan creek. Such flow into Duncan creek was accomplished only by installing the storm sewer which at some points was 16 to 18 feet below the surface of the ground. This clearly establishes that there was an elevation of land between plaintiffs' farm buildings and Duncan creek which, prior to the installation of the storm sewer, prevented such water from flowing westward. This court specifically held in *Gibeau v. Pratt, supra,* that no liability could be imposed on a municipal corporation under sec. 88.38 for failure to maintain a drainage ditch along a highway with the result that surface water backed up on plaintiffs' land, where the effect of the ditch in the first place was to cause the surface waters to flow in a different direction than was their natural flow.

For the reasons hereinbefore advanced it is our conclusion that the defendant county cannot be held liable in this action either on the theory of breach of contract or on the theory of

negligence, including negligence predicated upon a violation of statute.

At the same time as the appeal in this matter was argued before this court there was also argued a motion on the part of plaintiffs to dismiss the appeal on the ground that the appeal had not been authorized by the county board of supervisors of the defendant county. In support of this motion there was filed an affidavit setting forth the resolution of said county board of supervisors adopted April 23, 1953, which provided that the appeal was to be taken *"in the discretion of the highway committee"* of the county.

In support of the motion to dismiss it was argued that the county board had no authority to delegate to the highway committee the making of the decision as to whether to take an appeal to this court. However, a counteraffidavit was filed of the county clerk in opposition to the motion, which affidavit disclosed that after the passage of the resolution on April 23, 1953, claims were presented to such clerk for payment by the county of the expenses of forwarding the record to the supreme court, for payment of the court reporter for the original transcript of the testimony and copies thereof for purposes of the appeal, and for payment of the $10 filing fee in supreme court; that said claims were referred to a committee of the county board which committee reported back to the board recommending payment; and that the county board allowed each of the claims and the same have been duly paid pursuant to such allowance. These acts on the part of the county board in paying the expenses of appeal clearly establish that the county board did ratify the taking of the appeal. We, therefore, find it unnecessary to pass on the question of whether or not the original resolution of April 23, 1953, constituted an illegal delegation of power on the part of the county board, and the motion to dismiss the appeal must be denied.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint. Plaintiffs' motion to dismiss the appeal is denied without costs.

The following memorandum was filed February 2, 1954:

CURRIE, J. (*on motion for rehearing*). Plaintiffs, in their brief filed in support of their motion for rehearing, maintain that the private ditch referred to in the easement agreement as facilitating "the flow of water accumulating about the buildings on said [the plaintiffs'] farm into said storm sewer" served a public purpose. We have carefully reread the record, and can find nothing therein which impugns the accuracy of the following statement contained in our original opinion (ante, p. 300):

"There is no evidence in the record that such shallow ditch constituted an integral part of the WPA project or performed any function other than that stated in the easement agreement."

Correction should be made, however, of a misstatement occurring at the top of page 297 in the statement of facts. The grant of easement did not cover the portion of the underground sewer lying within the highway limits of Highway S but only that part "between the easterly bank of Duncan creek and County Trunk Highway 'S.'" The southerly boundary of the strip of plaintiffs' farm covered by the easement was the southerly boundary of such farm and the northerly boundary of such strip was a continuation of the north line of Highway S extended westerly to the creek. The record is silent as to there being any curve in Highway S between Highway 53 westerly to Duncan creek, but apparently Highway S must have turned either to the south or north so as to make it necessary to obtain the easement for

that part of the underground sewer extending beyond the limits of the highway, although the evidence established that the east end of such sewer was in the north ditch line of the highway.

*By the Court.*—Motion for rehearing denied with $25 costs.