THOMPSON and others, Respondents, vs. CITY OF EAU CLAIRE, Appellant.

*January 11—March 8, 1955.*

For the appellant there was a brief and oral argument by *David F. Nordstrom, D. L. Farr,* and *William H. Frawley,* all of Eau Claire.

For the respondents there was a brief by *Karl F. Peplau* of Augusta, *William A. Adler, Walter C. Crocker,* and *Wilcox & Sullivan,* all of Eau Claire, and oral argument by *Mr. Francis J. Wilcox, Mr. Peplau,* and *Mr. Adler.*

BROADFOOT, J.   On the westerly side of the disposal area there was a burning pit in which limbs, brush, leaves, and paper were burned. This fire was seldom extinguished and ordinarily as new material was added daily it would continue to burn. The garbage-disposal section was operated by the land-fill or sanitary-fill method. Large trenches were dug running north and south and the noncombustible materials were dumped into one end of a trench. This was compacted by running over the same with a tractor, and when a portion of the ditch was filled within a couple of feet of the top, that top portion was covered with dirt. After it was covered, the trucks would back over the filled portion and dump into the open portion of the ditch. The covering was done by a bulldozer attached to the tractor. A bulldozer operator and another attendant were on duty in the area six days per week. It was the custom of the attendant to clean up paper and other debris scattered by the winds within a 400-foot area around the trenches.

For some time prior to April, 1953, debris, consisting mostly of wastepaper, was blown by the wind from the disposal area over the entire tract and also upon other property

in that vicinity. The prevailing wind was from the west and much of the debris was blown in an easterly direction. Complaints had been made to the city about this condition. Upon several occasions prior to April, 1953, fires had escaped from a trench and burned some of the surrounding grassland. Upon one of those occasions the city fire department was called to extinguish the fire. Upon each of these occasions the fire was contained within the disposal area.

No telephone was maintained at the area, and the attendant on the day in question was forced to drive to an oil station some distance away to turn in the fire alarm. There was no well or water supply at the site, no fire lane was maintained around the outer edge of the site, and the only fire-extinguishing equipment there was a small hand-operated fire extinguisher which was used to extinguish fires on the tractor.

Shortly after noon on April 22, 1953, a fire started in the garbage-disposal trench. The tractor operator had gone to the city for lunch and the attendant was eating his lunch in the cab of the tractor some little distance away. He attempted to extinguish the fire with his feet and a shovel but was unable to put it out. He could not operate the tractor. The tractor operator arrived about ten minutes later and he attempted to control the fire with the bulldozer, but the wind spread the fire to the east where it ignited grass, leaves, and paper which had been spread from the disposal area. The fire spread rapidly and ignited a stand of trees on property immediately to the north of the Thompson property, and from there it ignited the Thompson home and garage. There had been no precipitation for some time prior to the fire and the grass, weeds, brush, and debris surrounding the area were very dry.

The defendant advances nine reasons for reversal, as follows:

1. The defendant, in operating its garbage-disposal site, was carrying out a governmental function.

2. Governmental functions may extend beyond corporate limits.

3. The relationship between the defendant city and the plaintiffs Thompson was that of governor and governed.

4. The proprietor-to-proprietor rule does not apply to the case at bar.

5. The defendant city was operating its disposal site in a well-known and accepted manner and method.

6. The court erred in refusing to submit questions of negligence and contributory negligence to the jury and in only submitting the question of nuisance.

7. The court erred in refusing to submit questions as to whether the fire originated in the garbage pit or in the burning area.

8. The evidence does not support the finding that the city maintained a nuisance.

9. The court erred in its instructions to the jury regarding the duty owed by defendant to plaintiffs.

The plaintiffs admit the first two contentions but contest the others. This court has repeatedly held that persons sustaining damages as the result of a nuisance created or maintained by municipal corporations are entitled to recover against the municipality even though such nuisance was the result of acts performed by the municipality in its governmental capacity where the relationship of governor and governed did not exist. *Harper v. Milwaukee,* 30 Wis. 365; *Hughes v. Fond du Lac,* 73 Wis. 380, 41 N. W. 407; *Robb v. Milwaukee,* 241 Wis. 432, 6 N. W. (2d) 222; *Holl v. Merrill,* 251 Wis. 203, 28 N. W. (2d) 363.

In *Harper v. Milwaukee, supra,* it was stated (p. 372) :

"The general rule of law is that a municipal corporation has no more right to erect and maintain a nuisance than a private individual possesses, and an action may be maintained against such corporation for injuries occasioned by a nuisance for which it is responsible, in any case in which, under like circumstances, an action could be maintained against an individual."

Our last pronouncement was in *Lloyd v. Chippewa County,* 265 Wis. 293, 61 N. W. (2d) 479, 62 N. W. (2d) 431, where this court said (p. 302):

"The defense of immunity of the county based upon governmental function is not available in the instant case under the decision of this court in *Matson v. Dane County* (1920), 172 Wis. 522, 179 N. W. 774. In that case the court held that, while the maintenance of a public highway by a county may be a governmental function with respect to the rights of the public traveling thereon, it is not such a function with respect to injuries thereby occasioned to the owners of adjoining property, and as to such adjoining owners the county acts in a proprietary capacity. In the *Matson Case* the court also held that a nuisance was created. Likewise in the case at bar, if plaintiffs' lands were flooded due to fault of the defendant county, we would also be confronted with a nuisance. In case of liability grounded upon nuisance there is no defense of immunity based upon performance of a governmental function available to the county where, as here, the relation of governor and governed did not exist between the county and the plaintiffs. *Holl v. Merrill* (1947), 251 Wis. 203, 207, 28 N. W. (2d) 363."

The defendant contends that its relationship with the Thompsons was that of governor and governed because the Thompsons were patrons of a licensed garbage collector who took their garbage to the defendant's disposal area and no fee was charged to them by the city. We cannot agree. There is nothing in the record to indicate that the garbage collector had any authority to haul the garbage of nonresidents to the city's property. Further, it does not disclose that the Thompsons knew or expected the hauler to dispose of their garbage at the city property. They were not residents of the city of Eau Claire and did not expect or receive any governmental benefits from that city.

The city next contends that the proprietor-to-proprietor rule does not apply to this case. It contends that where a

municipality is engaged·in a governmental capacity rather than in a proprietary capacity the relationship of proprietor to proprietor does not exist nor is that rule applicable. The city is mistaken in its concept of the rule. When speaking of the relationship of proprietor to proprietor the courts are referring to proprietors of land. Generally the rule applies as between adjoining landowners. The word "proprietor" is sufficiently broad to include owners and others with a definite interest in the land that is less than that of owner. The word "adjoining" is not limited to abutting lands but also covers adjacent or neighboring lands. Thus, the Thompsons and the city were proprietors of adjacent or neighboring lands and the proprietor-to-proprietor rule does apply.

The city requested the trial court to submit questions as to the negligence of the city and as to contributory negligence on the part of the Thompsons. The trial court refused to submit them. Nuisance is a difficult word to define. As a concept of law, nuisance has more than one meaning. The original meaning did not involve the element of negligence as one of its essential factors. If we assume in this case that negligence was a factor, the testimony does not indicate any acts or omissions on the part of the Thompsons that would constitute contributory negligence on their part. Where the testimony is not sufficient to raise the issue, the trial court should refuse to submit a question thereon.

The city also complains that the court refused to submit a question as to the place of origin of the fire, that is, whether it originated in the garbage pit or in the burning area. Apparently the city takes the position that the only fire it permitted was in the burning area and that if the fire originated in the garbage trench it was due to the act of some third person. It is without dispute that the fire was first noticed in or near the garbage trench. Whether that was caused by a spark or flame from the burning area or from the act of some other person would not determine the question

of liability. The liability is based upon a condition that the city permitted over a considerable period of time. Debris, consisting for the most part of wastepaper, had spread over the surrounding area. The entire area was dry because of the lack of precipitation. Other fires had started within the area and the city was aware of that fact, and it was aware of the condition that was inherently dangerous. It is clear that the fire originated on the defendant's property and as part of its operation, and escaped to the adjacent land because of the hazardous condition that the city permitted to exist. It is immaterial whether this condition was the result of negligence or not. The condition was so hazardous that it constituted a nuisance. As an example of the hazardous condition, the fire burned over a large area of neighboring land. The defendant's fire department worked about nine hours with 40 men before the fire was finally extinguished.

The city next contends that the evidence does not support the finding that the city maintained a nuisance. We have cited some of the testimony above. Although some of it is in dispute, there was ample testimony in the record to support the verdict of the jury.

Finally, the city contends that the court erred in its instructions. This contention is based upon one sentence taken from the court's charge. Taken as a whole the instructions were proper, and we find no error therein.

*By the Court.*—Judgment affirmed.