## MRS. LEO GEISLINGER AND ANOTHER v. VILLAGE OF WATKINS.

130 N. W. (2d) 62.

August 14, 1964—No. 39,002.

*Doherty, Rumble & Butler* and *Wendell R. Anderson*, for appellants.
*Howard I. Donohue*, for respondent.

THOMAS GALLAGHER, JUSTICE.

Actions for damages arising out of an accident in which plaintiff Mrs. Leo Geislinger fell down a stairway in a two-story building owned and maintained by defendant, village of Watkins. Plaintiff Leo Geislinger seeks reimbursement for medical expenses incurred.

The actions are based upon the claim that defendant was negligent in the maintenance of the building in that it permitted a separation and depression to exist between the second-story floor and the top tread of the stairway immediately adjacent thereto in which Mrs. Geislinger caught the heel of one of her shoes so that as a result she fell to the bottom of the stairway. Plaintiffs also claim that such negligence included defendant's failure to maintain more than one handrail on the stairs.

Defendant denied that it was negligent in its maintenance of the building and also asserted that its ownership and operation thereof as a village hall constituted a governmental function so as to immunize it from liability in actions such as these.

The jury returned a verdict for Mrs. Geislinger in the sum of $8,500; and for Leo Geislinger in the sum of $895.21. This is an appeal from a subsequent order of the court setting aside the verdicts and ordering judgment for the defendant.

The accident occurred November 5, 1960, at about 10 p. m., at which time Mrs. Geislinger was leaving a wedding shower which had been held in a large room or hall on the second floor of the building. She testified that as she reached the top of the stairs to descend the heel of one of her shoes had caught in a narrow separation about ¼

of an inch in width between the edge of the floor board and adjacent to the top stair tread so that she had lost her balance; that she then had reached toward her right to grasp something to hold on to but that there being nothing there she had fallen down to the bottom of the stairs and sustained the injuries for which her action was instituted.

. The record discloses that the stairway is about 5 feet in width and has one handrail on the side which was to the left of Mrs. Geislinger as she prepared to descend. From time to time defendant had rented out the second-floor hall to various individuals, civic and social organizations, and business enterprises for social affairs, dances, and meetings of various kinds at rentals ranging from $2 to $7 for each such use. The total income received from this source did not equal the annual expenses of operating and maintaining the building for the conduct of its governmental functions. For the evening during which the accident occurred, defendant had rented the second-floor hall at a rental of $5 to a Mrs. Edward Hess for the purpose of conducting a wedding shower which Mrs. Geislinger attended as an invitee of Mrs. Hess.

At the time of the accident there was in effect a policy of liability insurance on the building which had been purchased and paid for by defendant and which insured it against liability for damages arising out of accidents of this kind up to the amount of $20,000.[1] Notwithstand-

---

[1] At the time of the accident Minn. St. 1957, § 412.221, subd. 4, provided:

"The village council shall have power to procure insurance against liability of the village or of its officers and employees for torts committed within the scope of their official duties, whether governmental or proprietary."

Prior to the trial of the actions herein, this statute was amended by adding thereto the following (L. 1961, c. 230, § 3):

"The procurement of insurance by the village shall constitute a waiver of the defense of governmental immunity to the extent of such coverage in the insurance policy, and the writing of such policy by the insurance company shall constitute permission by the insurance company to the village to waive governmental immunity to the extent of the coverage in the policy. The waiver of defense of governmental immunity made pursuant to such provision in the policy of insurance shall not subject the village to liability in excess of the insurance coverage provided by the policy."

Subsequently subd. 4 was repealed by L. 1963, c. 798, § 16. Section 6

ing this, after the commencement of the actions, defendant's council adopted a resolution requesting that its attorney assert as a defense to such actions its total governmental immunity from liability for damages therein.

The verdicts above described, which did not exceed the coverage of the liability policies carried by defendant, were returned on November 1, 1962. Subsequent thereto, defendant moved for judgment notwithstanding the verdicts or in the alternative for an order granting it a

---

of c. 798 (Minn. St. 466.06) provides: "The governing body of any municipality may procure insurance against liability of the municipality and its officers, employees, and agents for damages resulting from its torts and those of its officers, employees, and agents, including torts specified in Section 3 [Minn. St. 466.03] for which the municipality is immune from liability; and such insurance may provide protection in excess of the limit of liability imposed by Section 4 [Minn. St. 466.04]. * * * The procurement of such insurance constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy but has no effect on the liability of the municipality beyond the coverage so provided."

Section 10 of c. 798 (Minn. St. 466.10) provides: "This act [Minn. St. 466.01 to 466.15] does not apply to any claim against any municipality arising before the effective date of this act. Any such claim may be presented and enforced to the same extent and subject to the same procedure and restrictions as if this act had not been adopted."

Section 14 of c. 798 (Minn. St. 466.14) provides in part: "The doctrine of 'governmental immunity from tort liability' as a rule of decisions of the courts of this state is hereby enacted as a rule of statutory law and shall be applicable to all matters and all of the instrumentalities of government enumerated in section 1 [Minn. St. 466.01] in the same manner and to the same extent as it was applied in this state on and prior to December 13, 1962. This section applies to matters arising prior to such date as well as to matters arising on and after such date."

Section 16 of c. 798, subd. 1 (Minn. St. 466.16, subd. 1), provides: "Subject to the provisions of section 10, Minnesota Statutes 1961, * * * 412.221, Subdivision 4 * * * [is] hereby repealed."

Section 17 of c. 798 (Minn. St. 466.17) provides in part: "Section 14 [Minn. St. 466.14] is in effect upon the adjournment of the 1963 regular session of the Minnesota legislature, but its provisions shall expire on December 31, 1963; * * * the other provisions of the act are in effect on January 1, 1964."

new trial. This motion was based on the contention that defendant had not waived its governmental immunity by its procurement of liability insurance in that this defense had been asserted in its answer pursuant to resolution of its council; and on the further ground that even in the absence of the defense of governmental immunity the evidence did not establish any negligence on the part of defendant. The motion for a new trial also asserted that the court had erred in submitting to the jury as a fact issue whether Mrs. Geislinger was an invitee or whether she was a gratuitous licensee on the premises at the time of the accident; and in conjunction therewith in instructing the jury as follows:

"* * * The degree of care in this case depends on whether Mrs. Geislinger was what we call an invitee or whether she was a licensee. * * * The question then is, was there an implied invitation for the plaintiff to enter and use the hall which had been extended by the Village of Watkins? * * * you should consider all the facts and circumstances in evidence, the conduct of the Village officials with reference to the permitted use of the hall, and the circumstances under which the hall was permitted to be used, and you must say from that whether or not there was any implied invitation on the part of the Village of Watkins that Mrs. Geislinger enter upon the premises.

"* * * If you find that Mrs. Geislinger was an invitee * * * you should consider whether or not the Village used reasonable care in maintaining the edge board of the floor, either as to the difference in the height of that board and the next board, or as to the crack between the two boards. You should also consider whether or not the presence of the moulding on the right side of the stair but no handrail was an indication of the exercise of due and reasonable care, or whether it was not."

In a memorandum attached to the order granting judgment notwithstanding the verdicts, the court stated:

"The order granting judgment is made with great reluctance. The pronouncement of the Supreme Court to end the doctrine of governmental immunity in the case of Spanel vs. Mound School District (De-

cember 18, 1962) * * * was long overdue, but unfortunately does not affect the present case. * * *

"Counsel for plaintiffs in his brief called the Court's attention to M. S. 412.221(4). The quotation in the brief is as that section was amended by 1961 Session Laws, Chapter 230, Sec. 3. The accident in this case occurred on November 5, 1960. M. S. 412.221(4) as of that time read as follows: 'The village council shall have power to procure insurance against the liability of the village * * * for torts committed within the scope of * * * official duties, whether governmental or proprietary.' Under the circumstances the law as amended is of no help in this case."

Subsequently in Schoening v. United States Aviation Underwriters, Inc. 265 Minn. 119, 120 N. W. (2d) 859, this court determined that the amendment to § 412.221, subd. 4, as adopted at the 1961 session of the legislature, was merely definitive of the right of a municipality to waive the defense of governmental immunity and would be applicable in situations of the kind presented here. There it was stated (265 Minn. 128, 120 N. W. [2d] 865):

"We * * * hold that while the provision explicitly declaring that procurement of liability insurance by a village constitutes a waiver of the defense of governmental immunity to the extent of such insurance coverage did not appear until 1961, the power of villages to waive the defense was implicit in the village code enacted in 1949 and was therefore the law in this state prior to 1961.

* * * * *

"We are clearly of the view that where a municipality expends public funds for the purchase of liability insurance, such expenditure constitutes a waiver by the municipality and its insurer to the extent of the policy coverage. Were we to hold otherwise, the funds so expended would be mere gifts to the insurance carriers. In accepting the premium payments the insurer thereby accepts the risk growing out of the municipality's ownership and operation of municipal facilities. The real effect of this rule is not to deprive the municipality of any right inherent in, and essential to, its governmental functions, but is only to make an insurance carrier liable for the losses which it has contracted

to cover in its policy. We are thus constrained to hold that, to the extent of liability insurance carried by a village, the governmental immunity from suit conferred by Minn. St. 360.033, subd. 2, of the Uniform Airports Act, is no longer a defense inuring to the benefit of either the village or its insurer in an action to recover for injuries resulting from negligent acts within the insurance coverage."

Defendant distinguishes the facts here from those involved in Schoening v. United States Aviation Underwriters, Inc. *supra*, in that here defendant by resolution of its council directed its attorney to assert the defense of governmental immunity, thereby manifesting its intent not to waive this defense even though it had purchased liability insurance; while in the Schoening case no such resolution had been adopted by the municipality there involved. Defendant also asserts that under L. 1963, c. 798, § 16 (§ 466.16), repealing § 412.221, subd. 4, a municipality's right to waive the defense of governmental immunity by the purchase of liability insurance became ineffective until January 1, 1964.[2]

■ Under this court's decision in Schoening v. United States Aviation Underwriters, Inc. *supra*, we cannot escape the conclusion that the amendment to Minn. St. 1957, § 412.221, subd. 4, enacted at the 1961 session of the legislature (L. 1961, c. 230, § 3) is applicable herein. While in the Schoening case reference was made to defendant's failure to adopt a resolution directing its attorney to assert the defense of governmental immunity notwithstanding the existence of liability insurance, this factor did not form the basis of our conclusion that the provisions of § 412.221, subd. 4, were applicable therein. There we stated that the power of villages to waive this defense was implicit in the village code enacted in 1949 and was therefore the law prior to 1961 when § 412.221, subd. 4, was amended. There we expressed the conclusion that this right of waiver to the extent of liability insurance coverage had been exercised when the municipality there purchased liability insurance giving it protection in negligence claims of this kind.

■ Likewise, we find nothing in L. 1963, c. 798, which would affect

---

[2] The effective date of L. 1963, c. 798.

the applicability of Schoening v. United States Aviation Underwriters, Inc. *supra*, to the instant case. While § 16 thereof did repeal the provisions of Minn. St. 1961, § 412.221, subd. 4, the legislature exempted from the effect of such repeal "any claim against any municipality arising before the effective date" of c. 798. This exemption is embodied in L. 1963, c. 798, § 10, which further provides: "Any such claim may be presented and enforced to the same extent and subject to the same procedure and restrictions as if this act had not been adopted." From this language it seems clear that the provisions of § 412.221, subd. 4, as construed in the Schoening case, would be applicable here, where the claim arose before the effective date of L. 1963, c. 798; and accordingly that the court erred in holding that defendant's right to assert the defense of governmental immunity had not been waived by its purchase of liability insurance as described.

■ Defendant contends that the court erred in permitting the jury to determine whether or not there was an implied invitation on the part of the village that Mrs. Geislinger enter upon the premises on the date of the accident.[3] It asserts that the evidence presented established as a matter of law that the relationship between the village and Mrs. Geislinger at that time was that of building owner and gratuitous licensee and that its responsibilities were therefore limited by the principles which govern that relationship.[4] We feel that the evidence here gives adequate support for the court's submission of this issue to the jury, and for a finding that Mrs. Geislinger was an invitee on the premises at the time of the accident. It discloses defendant's custom and practice of renting out the second-floor hall for business and social functions at rentals ranging between $2 and $7 for each occasion. It discloses that on the evening in question defendant had rented the hall to a Mrs. Edward Hess for $5 for a wedding shower and must have been aware that a number of people would attend a function of this kind. All such evidence would justify a finding that Mrs. Geislinger

---

[3] 13B Dunnell, Dig. (3 ed.) § 6984, sets forth the responsibilities of an owner of premises to those upon them by his express or implied invitation.

[4] 13B Dunnell, Dig. (3 ed.) § 6985, sets forth the responsibilities of an owner of premises to those upon them as bare licensees.

was on the premises at the specific invitation of Mrs. Hess and with the defendant's knowledge and consent. It would likewise give rise to an inference that defendant was aware that at such a function it would be necessary for guests of the lessee to use the stairways to gain access to the second floor. From such facts and inferences it could be found that defendant retained control over the stairway and was liable to anyone rightfully using the same for injuries occasioned by its failure to exercise reasonable care to keep it in a reasonably safe condition. Swenson v. Slawik, 236 Minn. 403, 53 N. W. (2d) 107; Iverson v. Quam, 226 Minn. 290, 32 N. W. (2d) 596. The fact that the rental of the second-floor hall had not been profitable, or that rentals derived therefrom did not fully compensate defendant for its expenses therein, would not lessen its responsibilities toward tenants thereof and their invitees therein in any respect. Johnson v. O'Brien, 258 Minn. 502, 105 N. W. (2d) 244, 88 A. L. R. (2d) 577; Namchek v. Tulley, 259 Minn. 469, 107 N. W. (2d) 856; 52 C. J. S., Landlord and Tenant, § 418.

■ With respect to the stairway, over which defendant retained control, its responsibilities and obligations to its tenant and the latter's invitees are well defined in Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 499, 31 N. W. (2d) 332, 334, as follows:

"* * * A landlord who retains possession and control of stairways and similar building facilities for the common use of the tenants * * * although not an insurer of the safety of these facilities, owes a duty of exercising ordinary care to see that such stairways and facilities are originally constructed *and subsequently maintained* in a reasonably safe condition for the use of tenants who are themselves exercising ordinary care. The duty of maintaining these facilities in a reasonably safe condition continues throughout the entire period of common use by the tenants * * * and requires reasonable inspection from time to time. Generally speaking, any defective condition in the premises caused by wear from prolonged and continual use is brought into existence gradually * * * and although the landlord may not have had actual notice, it becomes a question of fact whether in the exercise of ordinary care he could have discovered the hazardous condition and the

unreasonable risk involved therein in time to make repairs for the reasonable safety of others. * * * In the instant case, defendant must naturally have anticipated that the stairway would be used by a large number of tenants, and that as a result of such continual use the steps would in time become worn and defective. As a duty * * * defendant was bound to inspect the steps at reasonable intervals to ascertain their condition and not to wait until someone was injured as the result of a defect which a seasonable inspection would have revealed."

See, also, Iverson v. Quam, *supra*; Williams v. Dickson, 122 Minn. 49, 141 N. W. 849; Prosser, Torts (2 ed.) § 78, p. 459; Restatement, Torts, § 360c.

■ Under these principles, we have held that stairway defects of the kind described by Mrs. Geislinger would adequately support a finding of negligence on the part of a landlord retaining control of the stairway. Nubbe v. Hardy Continental Hotel System, *supra*. Thus, in the Nubbe case evidence indicating that the front edge of a stair tread was ½ inch lower than its back edge was held adequate to support a finding of a building owner's negligence. Likewise, in Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355, a turned-up strip and a worn edging on a stair tread were held evidence of an owner's negligence. See, also, Graeber v. Anderson, 237 Minn. 20, 53 N. W. (2d) 642. It would follow that in the instant case this issue was properly submitted to the jury.

■ Whether defendant's failure to supply a handrail on the side of the stairway opposite the handrail which was maintained constituted negligence would likewise appear to be a fact question. Thus in Vosbeck v. Lerdall, 245 Minn. 164, 169, 72 N. W. (2d) 371, 375, it was stated:

"* * * While it has been held that the absence of a handrail on an *ordinary* stairway free of defects is not indicative of the failure of a landlord to exercise reasonable care * * * this rule would not apply where the stairway involved is defective or where it has been constructed or is maintained in a way which might be regarded as dangerous for tenants using the same. In such instances, it might well be

found that ordinary care would require a handrail thereon as a safety measure."

See also Jeske v. George R. Wolff Holding Co. 250 Minn. 16, 83 N. W. (2d) 729, and Namchek v. Tulley, 259 Minn. 469, 107 N. W (2d) 856, where we held the responsibility of a landlord in such cases extended not only to the tenant but likewise to invitees on the premises.

The order appealed from is reversed with directions that judgments be entered in plaintiffs' favor.