Patricia COLLINS, Appellant
(Plaintiff below),

v.

MEMORIAL HOSPITAL OF SHERIDAN
COUNTY, Wyoming, et al., Appellees
(Defendants below).

No. 4262.

Supreme Court of Wyoming.

May 15, 1974.

Rehearing Denied June 21, 1974.

William K. Archibald of Holstedt & Archibald, Sheridan, Sandall, Moses & Cavan, Billings, Mont., for appellant (plaintiff below).

Weston W. Reeves of Cardine, Vlastos & Reeves, Casper, for appellees (defendants below).

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Plaintiff filed her complaint, seeking damages for personal injuries, joining Memorial Hospital of Sheridan County, Bertha Anderson, an employee thereof, and St. Paul Fire & Marine Insurance Company, for personal injuries sustained on November 21, 1971, while she was a paying patient at the hospital. Bertha Anderson was the employee attending the plaintiff when this accident occurred and St. Paul is the insurer of the hospital, having issued a liability policy to it. Memorial Hospital and Anderson both filed motions for summary judgments herein based upon the ground of sovereign municipal immunity, and the court entered final judgment thereon in favor of these defendants but overruled the summary judgment insofar as the suit against St. Paul was concerned. Although the appellant seeks a ruling on the question of whether this suit may be maintained solely against St. Paul on the policy on the theory of a third-party beneficiary, this question is not presented because there is no appealable order entered in this suit. Insofar as St. Paul is concerned it would be improper in this case to consider the matter of its liability in a direct action.

█ The trial court sustained the motions for summary judgment on behalf of defendants hospital and Anderson, which ruling was obligatory upon the trial court by virtue of the cases of Maffei v. Incorporated Town of Kemmerer, 80 Wyo. 33, 338 P.2d 808, rehearing denied 340 P.2d 759, and Davis v. Board of County Commissioners of County of Carbon, Wyo., 495 P.2d 21. From the framework and factual situation of this case, when it is carefully viewed, the result is apparent that the rule of Maffei results in a confusing and undesirable situation and that the only party who will be in any manner benefited thereby is St. Paul, the insurance carrier.

We have heretofore held in Gonzales v. Personal Collection Service, Wyo., 494 P. 2d 201, 206, that the power of the trustees of a county hospital board are general and quite broad with the power to manage, operate, and control the hospital and its operations, § 18–318, W.S.1957, along with the power to sue and be sued. The hospital board having exercised and asserted the power to buy the insurance, having purchased the same, and having spent public funds or obligated public funds in the sum of approximately $5,000, would indeed be in a peculiar position if it would now attempt to assert on its own behalf that it had no right to purchase such insurance; and that in effect it had arbitrarily and without proper authority made expenditure of public funds, and thereafter without assignment of any cogent reason requested St. Paul to assert this claim of immunity.[1] The inference is clear from the use of the word "agrees" that this was in response to a request by St. Paul. It is hard to reconcile with fairness and justice, after the expenditure of public funds, that the board of trustees of the hospital should reserve an arbitrary right to select those who may

benefit under this policy and adjudicate their own liability thereby.

This factual situation does not raise any question of general municipal sovereign immunity as such but only the effect of the procurement and coverage of a liability policy and the question of general municipal immunity will in no manner be considered herein. The factual situation revealed by the record demonstrates with clarity the vice inherent, and what this writer views as a too-broad extension of this general doctrine. This court in retrospect may well have been guilty of a decision which is fraught with unfairness both to claimants and to taxpayers. It seems proper to give notice of the modern tendency to limit and restrict the application of municipal sovereign immunity, Myers v. City of Palmyra, Mo., 355 S.W.2d 17, 21, 92 A.L.R.2d 791.

The legislative reaction to the holding in Maffei decided in 1959 was immediate as we find that in 1961 the legislature authorized municipalities to carry liability insurance with the limitation that no recovery should be had to exceed the limits of the policy and forbade such cities or towns to plead governmental immunity under these circumstances, § 15.1–4, W.S.1957, C.1965. This is solid evidence of the recognition of the injustice of such holding and it is difficult to believe that our legislative bodies would only seek to remove such injustices after they have been suffered by some innocent bystander, and have been signalling the disapproval of the application of this rule by their several enactments clearly indicating their disapproval of this rule and that the protection by liability insurance is not against public policy.

There is a further rather anomalous situation in our statutes which allowed hospitals operated by hospital districts to pur-

---

1. This request evidenced by that certain letter dated January 16, 1973, as follows:
"Dear Mr. Cardine:
"The Board of Trustees by action at its August 10th meeting agrees that you as our attorneys should assert the defense of governmental immunity to the claim of Patricia Collins in Civil Action No. 17706 in the Fourth Judicial District Sheridan County, Wyoming.
"Yours truly,
"/s/ John Owen Yale
"JOHN OWEN YALE,
"Administrator"

chase such insurance prior to the date of this accident, § 35–136.7, W.S.1957, 1973 Cum.Supp. After this accident and in 1973 by legislative enactment, § 18–323.7, W.S. 1957, 1973 Cum.Supp., county hospitals, as defendant herein, were so authorized. It is impossible to imagine a more unfair and ridiculous situation than that upon the same day in various governmentally operated hospitals in Wyoming a patient in one class hospital would have protection and a patient in another class hospital would have no protection. It is this, along with the other factual situations, that makes this writer believe that the time is now ripe for a close examination of the doctrine of Maffei and Davis, which hold that municipal sovereign immunity cannot be waived by the carrying of liability insurance in absence of specific legislative authority. It would appear that the legislature sought to restrict this rule in part by the enactment of several statutes.[2] This is a court created rule and can lay no claim to any basis of ancient origins.

The writer has oft been at odds with the theory that when the courts help create an "Aegean stable" the legislature has the sole responsibility for cleaning up the mess and in this case we would defeat the ends of justice by requiring specific legislative action in every instance where recovery may be sought. The writer freely concedes the importance, necessity, and strength of the doctrine of stare decisis and following precedents in areas which might or do threaten the stability of the law, and which may or might conceivably interfere with vested rights, but is unable to utilize this doctrine as a justification for the continuance of an unfair and improper rule which operates to the detriment of those who may suffer tortious injury from such institutions and which may be ameliorated at least to the extent of the liability insurance

coverage without harm to any person or institution.

Particularly would it seem appropriate when the root doctrine of municipal immunity itself has been the subject of vigorous attacks—many jurisdictions having abrogated it.

It may be conceded that numerical superiority supports the rule of the Maffei case, but a blind unquestioning acceptance without critical examination of the logic and basis for such cases can become a form of evasion of judicial responsibility and reduce an appellate court to the function of a mere scorekeeper.

It is possible that the preoccupation of the court in the Maffei case with the question of municipal sovereign immunity may have obscured a very narrow question and that is the same question which may well be reconsidered here, whether the purchase of liability insurance and the holding of such liability policy might well be considered a waiver of such immunity. It is particularly important in this writer's view that a great number of these cases upon which this theory rests were written during a time before liability insurance became an ordinary fact of life recognized and employed by a large number of our citizens for their protection and with an understanding of the purpose thereof. Maffei, being the root case, this discussion although directed at that case must be construed as including Davis wherein no critical examination of this rule was made.

When the defendants hospital and Anderson are, as in this case, protected by liability insurance, there is no reason for the invocation or continued application of this rule.[3] The legal maxim, cessante ratione legis cessat ipsa lex, is certainly applicable.

A close examination of the authorities and subsequent treatment in their respec-

---

2. Sections 35–136.7, supra, 21.1–43, W.S.1957, and 21.1–44, W.S.1957, which sections contain no waiver but authorize the purchase of insurance.

3. See opinion of Justice Blume, who suggests the same rationale as a basis for abolition of the common-law interspousal immunity if liability insurance would cover the loss, McKinney v. McKinney, 59 Wyo. 204, 135 P.2d 940, 951, et seq.; Lynwood v. Decatur Park District, 26 Ill.App.2d 431, 168 N.E.2d 185, 187.

tive jurisdictions upon which Maffei relies as persuasive authority for the proposition that there can be no waiver of a municipality's immunity except by specific legislative authority is most enlightening, and is of and in itself illustrative of what is the modern and fairest trend. The case of Pohland v. City of Sheyboygan, 251 Wis. 20, 27 N.W.2d 736, was directly and implicitly reversed in the case of Marshall v. City of Green Bay, 18 Wis.2d 496, 118 N.W.2d 715, 717. Interestingly, the Supreme Court of Wisconsin prospectively abrogated the entire doctrine of tort immunity for municipal corporations in the case of Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, 625, in a most scholarly opinion. The standing of Rittmiller v. School Dist. No. 84 (Wabasso, Minn.), D.C.Minn., 104 F.Supp. 187, is not enhanced by the fact that the result should be completely different today because Minnesota has directly abolished the doctrine of municipal tort immunity, Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795. It is of interest that in Rittmiller a suit was allowed against the driver under the policy in question without any discussion except that he was covered by the policy. This is in light of the oft-repeated rule that the immunity inures to the servant while engaged in a covered activity. The Minnesota Supreme Court further does not recognize Rittmiller as authority for the proposition that a municipality may not waive its governmental immunity from tort liability, pointing out this case was not in point and merely considered the liability under certain statutory provisions, although the opinion remarks that by taking a statement out of context it appeared forceful upon this question it was not applicable, Schoening v. United States Aviation Underwriters, Inc., 265 Minn. 119, 120 N.W.2d 859, 864. The Indiana Supreme Court has seriously eroded, if not destroyed, the force of Hummer v. School City of Hartford City, 124 Ind.App. 30, 112 N.E.2d 891, by the following from

Flowers v. Board of Commissioners of the County of Vanderburgh, 240 Ind. 668, 168 N.E.2d 224, 227:

" * * * 'If it sees fit to protect the general public against its negligence in so doing by procuring appropriate insurance, the insurance carrier waives immunity, based on the governmental function principle, as a defense in the event of suit. * * *'"

and later in the opinion specifically disapproves Hummer insofar as it is inconsistent with the views expressed in this opinion.

The cited case of Wallace v. Laurel County Board of Education, 287 Ky. 454, 153 S.W.2d 915, cannot be authority for the principle that there can be no waiver of a municipality's immunity unless by specific legislative authority, for the reason that on page 916 that court poses the single question passed upon as:

" * * * Is a County Board of Education liable in tort? * * *"

The opinion in Maffei calls attention to the fact the only case cited in support of the contention that such immunity was waived by purchase of insurance was Rogers v. Butler, 170 Tenn. 125, 92 S.W.2d 414. There are many such cases from that jurisdiction, Bailey v. City of Knoxville, D.C.Tenn., 113 F.Supp. 3, 5—so many that this has been styled the "Tennessee Rule." Although this opinion earlier discusses the case of Thomas v. Broadlands Community Consol. School Dist. No. 201, 348 Ill.App. 567, 109 N.E.2d 636, 640, in another context, this writer views that case as authority for the same proposition.

Although it involves a discovery proceeding, the case of Christie v. Board of Regents of University of Michigan, 364 Mich. 202, 111 N.W.2d 30, 31, contains a discussion which is most compelling, and states the necessity to explore the ultimate and decisive question as follows:

" * * * Whether the resolution of the defendant Board to acquire and maintain

such liability insurance operates as a matter of law to waive its immunity to the extent of the insurer's obligation." and cites this as the enlightened rule. The summarization appearing therein is most compelling, as follows 111 N.W.2d at 32:

"The first point—that the Board's determination to acquire and carry liability insurance removes the historic reason for immunity—requires no extended analysis. We are yet free to pick and choose among authorities extant. My choice, if it were presently necessary to choose, would be with the 'enlightened' —and visibly growing—minority. As the cited annotation shows, the more numerous authorities adhere to position that public bodies, having spent public money for liability protection thereby incur no liability; a game which in fact if not by design unjustly enriches the insurer for carrying a risk where there is no risk. Other authorities, 'enlightened' I repeat, pursue the opposite and more explicable view."

Beach v. City of Springfield, 32 Ill.App. 2d 256, 177 N.E.2d 436, 440, being a case wherein a municipality secured an insurance policy with a deductible clause, recognized a recovery in that case, holding, however, that the city had no liability for the deductible portion and was immune from such payment but not for a judgment above that amount and which was within the policy limits. The following applicable words appear therein:

"* * * Finally it would appear that public policy dictates that where premiums are paid for protection out of public funds to protect persons injured as a result of the negligence of the insured, the insurance company should be foreclosed, estopped or prevented from asserting a defense of the sort set forth here."

Also, see Schoening v. United States Aviation Underwriters, Inc., supra, 120 N.W. 2d at 865; Geislinger v. Village of Watkins, 269 Minn. 116, 130 N.W.2d 62, 67. Because this record leaves little doubt this immunity defense originated in the mind of the insurance company we believe there is a particular reason why this principle should apply. The principle is clearly recognized in the case of Vendrell v. School District No. 26C Malheur County, 226 Or. 263, 360 P.2d 282, 291, although that case arises under a statute authorizing the purchase of liability insurance but not requiring it.

Various reasons have been assigned for the perpetuation of the doctrine of municipal immunity from liability for torts. Those widely advanced summarily stated that the sovereign is immune from suit; that it is better that the individual suffer the injury than the public an inconvenience; and that it tends to retard the city in the performance of its duties.[4] It would seem that the only substantial and tenable reason for the maintenance of this doctrine is the protection of the public funds or the so-called "trust fund theory." [5] Nor does

---

4. Barker v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480, 482; Annotation 120 A.L.R. 1376, which rather effectively destroys these bases.

5. A clear statement of this appears in Thomas v. Broadlands Community Consol. School Dist. No. 201, 348 Ill.App. 567, 109 N.E.2d 636, 640:

"* * * The only justifiable reason for the immunity of quasi-municipal corporations from suit for tort is the sound and unobjectionable one that it is the public policy to protect public funds and public property, to prevent the diversion of tax moneys, in

this case school funds, to the payment of damage claims. There is no justification or reason for absolute immunity if the public funds are protected. Their protection has been the real and historical reason for the absolute immunity both elsewhere and in Illinois accorded quasi-municipal corporations, and similarly, municipal corporations in the exercise of a governmental function. Liability insurance, to the extent that it protects the public funds, removes the reason for, and thus the immunity to suit. The reasoning of the Supreme Court in the Moore case, supra [Moore v. Moyle, 405 Ill. 555, 92 N.E.2d 81], applies with equal force to the question before us. If the public funds are

Maffei, supra, fail to recognize that protection might be given the governmental body by a properly formed judgment, but may tend to create confusion in the minds of those injured when the following statement appears, 338 P.2d at 818:

> " * * * even though the purchase of insurance should be authorized by statute, the desired protection cannot be assured, unless the insurance company is joined in the action as a co-defendant and made solely responsible to answer to any judgment rendered, or in the absence of such joinder, any judgment authorized to be rendered is limited to be recovered only from moneys made available by the insurance company and not otherwise."

The appellants herein, in reliance thereon, have joined the insurance company but because we have no "direct action statute" and because the insurance liability is made dependent upon a recovery against their insured a direct approach is indicated and preferable. This statement seems a tacit recognition at that time that the insurance company should not fairly escape liability and further on the same page this court did recognize the inequitability of such result. This court sees no detriment which may arise if the recovery is limited to the extent of the coverage and is in no manner recoverable from government funds, nor does it appear to be an insurmountable task for the court to so limit the judgment, Beach v. City of Springfield, supra; Lynwood v. Decatur Park District, 26 Ill.App. 2d 431, 168 N.E.2d 185. There is a serious question as to whether the taxpayers of Sheridan County represented by the county board received any consideration for the funds expended for this policy or whether

the consideration may have been inadequate if we are to hold by virtue of their assertion of the doctrine of immunity the appellant may not recover herein. Appellees, apparently anticipating this thought, assert the purchase of such insurance is justifiable upon other grounds, summarily stated as a fringe benefit for employees, but the citation recognizes this limited risk, and also as a protection against an unexpected change in the immunity doctrine.[6] If these be the basic intended purposes for which this policy was purchased it might be suggested that it be limited thereto with what the court would assume to be a proper adjustment of premium if it is to cover only these risks.

It is for the within reasons that we specifically overrule the cases of Maffei and Davis insofar as they hold that the purchase of liability insurance is not a waiver of tort immunity, at least up to the amount of the coverage, and reverse the judgment entered herein in favor of the defendants hospital and Anderson, and remand this case for trial and disposal in conformity with the views herein expressed.

Judgments reversed.

McCLINTOCK, J., who participated in the argument, disqualified himself from further participation.

PARKER, Chief Justice (dissenting).

The holding in this case seems to rest entirely on the philosophical leanings of the court and the suggestion that there are somehow inequities which arise from the payment for insurance coverage unless despite a defense of governmental immunity the insurer is required to pay.[1] Such rea-

---

protected by liability insurance, the justification and reason for the rule of immunity are removed." Also, 18 McQuillin, Municipal Corporations, § 53.24, p. 172 (3d Ed. Rev.).

6. Citing Minge, Governmental Immunity From Damage Actions in Wyoming, 7 Land and Water Law Review, 617, 634 (1972).

1. To say that no detriment may arise if recovery is limited to the extent of the coverage is to overlook the increase in insurance rates which must result from the holding in this case.

sons are untenable and insufficient to justify the reversal of decided cases of this court: Maffei v. Incorporated Town of Kemmerer, 80 Wyo. 33, 338 P.2d 808, rehearing denied 340 P.2d 759; Davis v. Board of County Commissioners of County of Carbon, Wyo., 495 P.2d 21, in disregard of stare decisis.

In recent years the legislature has undertaken to deal piecemeal with certain aspects of governmental immunity and that body rather than the court should resolve the problem since the subject is within the prerogative of the electorate. Additionally, any application of a change would be both prospective and definite.

The present decision will leave us in a state of chaos; it covertly suggests that governmental immunity is vulnerable and then takes another bite by holding such immunity is waived by the insured. Under this decision, no one in governmental capacity can have any reasonable assurance as to the extent of his organization's liability or even his own. Each will be faced with the possibility that the courts may at any time abolish governmental immunity. What they do to protect themselves from this contingency is now used against them by calling it a "waiver."

The equities of the situation are totally against the position taken in the majority opinion. Many persons engaged in governmental work, particularly those associated with hospitals, schools, and the like, serve gratuitously or for the smallest remunerations. Being uncertain of what the courts might do, they have procured insurance in the hopes that they can in some way avoid liability to their organizations and perhaps to themselves. Instead the opposite results. Their purchase of insurance, the only way they knew to protect themselves, is used as an excuse to hold them liable. Is this not the greatest of inequities?

If this court has an irresistible urge to clean the "Aegean stable" let it once and for all do so forthrightly and not by innuendo.