NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0559n.06
Filed: September 12, 2008

Case No. 07-1755

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMI PRZYBYLINSKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| CSX TRANSPORTATION, INC., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: KENNEDY, BATCHELDER, and GRIFFIN, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Plaintiff-Appellant Jami Przybylinski ("Przybylinski") appeals the district court's order granting in part and denying in part Defendant-Appellee CSX Transportation, Inc.'s ("CSX") motion for summary judgment and granting judgment for CSX in this case filed pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*. Because we find that CSX did not breach its duty to Przybylinski, we **REVERSE** the district court's determination to the contrary, but we **AFFIRM** the judgment in favor of CSX.

## I. BACKGROUND

Przybylinski began working for CSX in May, 2002, as a bridge tender at the Saint Joseph's Bridge ("Bridge") in Saint Joseph, Michigan. CSX owns and operates the Bridge which in the closed position carries rail traffic across the St. Joseph River and accommodates pedestrian traffic via a metal walkway. The Bridge is a swing bridge that rests on a vertical column; a portion of the

Bridge known as the swing span rotates 90 degrees to allow boat traffic to pass on the river. The portions of the Bridge leading to the swing span are called the approaches. As a bridge tender, Przybylinski controls the Bridge's position — open or closed — from the control house on the south bank of the river.

The walkway on the Bridge is constructed of pieces of metal grating that are approximately 20 feet long and are attached to the railroad ties with dome-head lags and lag screws. A cable running through vertical posts on the east side of the Bridge serves as a hand rail for the walkway. On the morning of October 17, 2004, Przybylinski was walking on the northern approach portion of the walkway when she fell and suffered significant injuries.[1] Przybylinski contends that the "seams"[2] at the point of her fall were of uneven height creating an irregular walking surface and that several fasteners and screws were sticking up, adding to the irregularity of the walking surface. Photographic evidence in the record shows that the two pieces of metal grating at the seam were uneven by approximately 1/4 of an inch and that several screws or fasteners also projected out 1/4 of an inch. Przybylinski contends that the walkway was damaged by a train derailment on the Bridge in September 2004, but acknowledges that the surface was slightly uneven prior to the derailment.

The day of the fall, Przybylinski described the incident to her supervisor, Joseph Capriglione, who recorded her description in an incident report:

> Walking across bridge on walkway, strong gust of crosswind caught me off balance — when stepping for footing tripped on grating, bolt something — fell forward on lft. knee & rt. hand. Excess winds had been for past 24 hr+.

---

[1]Przybylinski suffered a fractured right wrist and a tear in the anterior cruciate ligament in her left knee, requiring reconstructive surgery.

[2]The "seams" are the points on the walkway at which two pieces of metal grating meet.

Capriglione also compiled a more complete accident inspection report stating that the Saint Joseph's Coast Guard station recorded wind gusts of 23 knots at the time of Przybylinski's fall. Przybylinski now contends that the wind did not contribute to her fall; that she fell solely because of the uneven walking surface.

Przybylinski insisted in her affidavit that before the incident she told both Wayne Larr ("Larr"), bridge foreman, and Phil Freeman ("Freeman"), supervisor, about the condition of the walkway around the area in which she ultimately tripped. Additionally, Przybylinski stated in her deposition that she told Larr and Tom Masters ("Masters"), another bridge tender, but equivocated about whether she told Freeman. Contrary to Przybylinski's testimony, Larr testified that Przybylinski told him about a problem not with the grating on the approaches, but on the swing span, which Larr fixed. Furthermore, Larr testified that he traversed the walkway 10-15 times per day and did not notice any unsafe conditions on the approaches — the area in which Przybylinski fell — at any time before October 17, 2004.

Przybylinski filed this action on December 30, 2005, seeking damages for her injuries under FELA. Nearly a year later CSX moved for summary judgment alleging that Przybylinski could not establish that CSX breached its duty to provide a reasonably safe workplace, that her injury was foreseeable, or that CSX's alleged negligence caused her injury. On May 16, 2007, the district court issued an opinion and order granting in part and denying in part CSX's motion for summary judgment. The district court concluded that: (1) Przybylinski did present a jury question regarding whether CSX breached its duty to provide a reasonably safe workplace; (2) Przybylinski failed to establish that her injury was reasonably foreseeable; and (3) Przybylinski did not demonstrate that CSX's alleged negligence played any part in causing her injury. Thus, the district court denied

3

CSX's motion for summary judgment on the issue of breach of duty, but granted it on the issues of foreseeability and causation, and entered judgment in favor of CSX. Przybylinski timely appealed that decision to this court.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, using the same standard applied by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In order to defeat a summary judgment motion, the nonmoving party must "show sufficient evidence to create a genuine issue of material fact." *Preblich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). That is, the nonmoving party must present sufficient evidence to permit a reasonable jury to find in its favor. *Id*. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

## III. ANALYSIS

Przybylinski brought suit against CSX under FELA, specifically alleging that CSX failed to maintain the walkway properly, and that this failure led to an unsafe working condition that in turn led to Przybylinski's injury. FELA provides in relevant part:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. In order to present a prima facie case under FELA, Przybylinski must establish that: (1) she was injured within the scope of her employment; (2) her employment was in furtherance of CSX's interstate transportation business; (3) CSX was negligent in its maintenance of the walkway; and (4) CSX's negligence played some part in causing the injury for which she seeks compensation under FELA. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007) (citing *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir. 1985) (internal citations omitted)). Przybylinski must present more than a scintilla of evidence to demonstrate each element of the prima facie FELA case. *Green*, 763 F.2d at 808.

CSX agrees that Przybylinski satisfied the first two elements of the prima facie case. Przybylinski was injured walking on CSX property to the control house in which she worked. Moreover, her work as a bridge tender certainly furthered CSX's interstate transportation business. Therefore, we hold that Przybylinski satisfied the first two elements of her prima facie case. CSX contends, however, that Przybylinski failed to demonstrate that CSX was negligent and, even if she could show that CSX were negligent, she could not show that its negligence played any part in causing her injury.

5

Because FELA contains a negligence standard, *see Norfolk Southern Ry. v. Sorrell*, 549 U.S. 158, 127 S. Ct. 799, 805 (2007), in order to survive CSX's motion for summary judgment, Przybylinski "needed to present evidence sufficient to raise a genuine issue of material fact as to every element of [her] negligence claim," *Van Gorder*, 509 F.3d at 268 (citing *Celotex*, 477 U.S. at 322). And a plaintiff seeking to prove a FELA claim must "prove the traditional common law elements of negligence; duty, breach, foreseeability, and causation." *Adams v. CSX Transportation, Inc.*, 899 F.2d 536, 539 (6th Cir. 1990) (quoting *Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987)). "Under FELA, a railroad has a duty to provide its employees with a reasonably safe workplace; this does not mean that a railroad has the duty to eliminate all workplace dangers, but only the 'duty of exercising reasonable care to that end.'" *Van Gorder*, 509 F.3d at 269 (quoting *Baltimore & Ohio S. W. R. Co. v. Carroll*, 280 U.S. 491, 496 (1930)). CSX agrees that it had a duty to keep the walkway in a reasonably safe condition.

The issues raised in this appeal are whether CSX breached its duty, the foreseeability of Przybylinski's injury and whether, if the injury were foreseeable, CSX's negligence played any part in causing it. The district court held that genuine issues of material fact exist regarding whether CSX breached its duty to provide Przybylinski with a reasonably safe working environment, but that Przybylinski had not demonstrated that any genuine factual issue remained for trial material to foreseeability or causation of the harm. Because we hold that Przybylinski did not present evidence from which a reasonable jury could find that CSX breached its duty to her, we do not address the issues of foreseeability or causation.

A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances to make the working environment safe. *Tiller v. Atlantic C. L. R. Co.*, 318 U.S. 54,

6

67 (1943); *see also Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 811 (6th Cir. 1990) ("[A] railroad breaches its duty to its employees by failing to provide a safe working environment if it knew or should have known that it was not acting adequately to protect its employees."). It is therefore Przybylinski's burden to present sufficient evidence of a particular failure of CSX to provide a safe working environment. The district court, in concluding that Przybylinski had raised a genuine issue of fact material to whether CSX breached its duty, ignored the fact that Przybylinski does not know what caused her to trip. She testified that there were three possible causes: (1) she caught her boot in the grating; (2) she tripped over the 1/4 inch difference in the walking surfaces at the seam; or (3) she tripped on the screws or fasteners that held down the grating sections. Taking the facts in the light most favorable to Przybylinski, we accept her testimony that she tripped because of <u>one</u> of the above enumerated conditions. But Przybylinski can do no more than speculate about <u>which</u> of those conditions actually caused her to fall. Consequently, Przybylinski has not presented evidence from which the jury could find which condition rendered the working environment unsafe.

Przybylinski cannot rely on speculation to take the place of proof. *Green*, 763 F.2d at 807 (quoting *Moore v. Chesapeake & O.R. Co.*, 340 U.S. 573, 578 (1951)). She has not presented evidence that she did <u>not</u> fall simply because she caught her boot on the metal grating. On the other hand, she has not presented evidence that she did fall either because of the irregularity in heights of the walking surface or because the slightly protruding fasteners. Significantly, Przybylinski is not alleging a defective design of the Bridge, but defective maintenance. Thus, she is not arguing that the fact of the walkway's being constructed of metal grating, of itself, constitutes a breach of CSX's duty. And if, as she speculates, the cause of her fall may have been that she caught her boot in the

7

grating, that possible cause would not — as we will explain hereinafter — be due to CSX's negligence at all.

It is Przybylinski's burden to prove that she was injured because of CSX's negligence. Even if we were to hold that both of the other two possible causes of her injury were attributable to CSX's negligence — which, as we will explain, we do not — Przybylinski cannot satisfy her burden by speculating that the chances that she might have been injured by an unsafe working condition were two out of three. *See Anderson*, 477 U.S. 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Przybylinski cannot put before the jury any actual evidence — beyond the mere speculation offered to us — as to what caused her injury, and the jury would be in no better position than this court to decide her claim. Additionally, CSX does not challenge the factual basis of Przybylinski's proffered reasons, but argues only that none of the three is sufficient to prove it breached its duty. Therefore, there are no genuine issues of material fact regarding CSX's alleged breach of duty, and the evidence is simply insufficient to prove the element of breach. Nonetheless, we will discuss each of the three possible causes of her fall in more detail.

First, Przybylinski claims that she might have fallen after "catching" her boot in the grating. Again, Przybylinski does not allege that the walkway was defectively designed. Composing a walkway of metal grating serves an important purpose for CSX inasmuch as moisture can freely travel through the grating and not collect on the walkway, creating a safety hazard. Larr testified that it is somewhat common for a person walking on such grating to catch his foot. A decision that Przybylinski's falling after catching her boot on the metal grating on the walkway demonstrates a breach of CSX's duty to provide a reasonably safe workplace would effectively be a decision that

8

the use of metal grating itself is a breach of a railroad's duty under FELA. Even if Przybylinski were making such an argument — which she is not — we would not find it meritorious.

Second, Przybylinski claims that she may have tripped on the uneven walking surface between the two sections of metal grating at the seam, which the record shows to be a 1/4 inch difference in grade. CSX has a duty to provide a reasonably safe working environment, not a perfect working environment. *See Van Gorder*, 509 F.3d at 269 (A railroad need not "eliminate all workplace dangers."); *see also Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) ("FELA 'does not make the employer the insurer of the safety of [its] employees while they are on duty. The basis of [its] liability is negligence, not the fact that injuries occur.'" (quoting *Ellis v. Union Pacific R. Co.*, 329 U.S. 649, 653 (1947)). It is not unreasonable to have such de minimis irregularities in a walking surface. Finding that Przybylinski presented a jury question based on this theory of her fall would either turn FELA into a strict liability statute — any injury in the workplace automatically triggers the railroad's liability — or require that under FELA, the railroad must provide a perfectly safe working environment. Neither is the law.

Finally, Przybylinski claims that she might have tripped over the screws or fasteners that secured the metal grating to the bridge. Again, the record shows that the bolts or fasteners protruded 1/4 inch above the normal walking surface. As a matter of law a 1/4 inch difference in grade on a walking surface is not enough to establish that a railroad breached its duty to provide a reasonably safe workplace. To find otherwise would be to require a railroad to provide a perfect working environment free from all dangers, which, as we have already said, is not the law.

Because we hold that Przybylinski cannot establish that CSX breached its duty, we hold that she failed to establish a prima facie FELA case. Therefore, summary judgment for CSX is appropriate.

## IV. CONCLUSION

Accordingly, we **REVERSE** the district court's conclusion that Przybylinski presented a jury question on the issue of breach of duty, but **AFFIRM** the judgment of the district court granting summary judgment for CSX.

Kennedy, Circuit Judge, dissenting.

Unlike the majority, I agree with the district court that the 1/4 inch difference in heights between sections of the bridge metal grate panels and the protruding fastening screws are each sufficient to permit a jury to find that CSX failed in its duty to provide plaintiff with a safe place to work.

While I have been unable to find any FELA case alleging a 1/4 inch difference between two levels of walkway, state courts have found a jury issue where a store owner whose duty it is to provide reasonably safe premises for its invitees, a duty very similar to the duty here, was found negligent in permitting a 1/4 inch difference in levels at the head of a stairway when the customer fell when her shoe came in contact with the rise. *Haverkost v. Sears,Roebuck & Co.*, 193 S.W.2d 357 (Mo. Ct. App. 1946). Again, in *Geislinger v. Village of Watkins*, 130 N.W.2d 62 (Minn. 1964), the Minnesota Supreme Court found 1/4-inch difference in level between the edge of the floor board and the adjacent top stair tread at a spot without a reachable handrail violated an owner's duty to an invitee to exercise due and reasonable care. 130 N.W.2d at 66. The walkway was especially precarious at the location where plaintiff fell since the handhold provided on the rest of the walkway was discontinued for a distance to accommodate the swing nature of the bridge.

Similarly, I disagree with the majority that the protruding dome-head and hex screws are not hazards. The record lacks evidence as to the exact height of the tripping hazards. From looking at a photograph, bridge foreman, Wayne Larr, estimated the protrusion of the hex screw above the walkway at 1/4 of an inch based on the thickness of the screw's head. J.A. at 77. However, in defendant's photograph taken the day of the accident, Przybylinski deposition exhibit 5, J.A. at 47,

11

it is clear that the screw head is on top of a 1 inch washer which sits on top of the grating, adding to the height of the tripping hazard. The record is devoid of estimates as to the height of the dome-head protrusion, although from the pictures, it appears to be at least the height of the hex screw. J.A. at 44. Sitting on the southerly grate at the grate's seam, the dome-head screw's head adds to the 1/4 inch difference in the grate heights, creating a tripping hazard of at least 1/2 of an inch. J.A. at 44.

I also disagree with the majority's finding that plaintiff testified or admitted that she could have caught her boot on one of the openings in the grate. Read in context, when in her deposition or statement she refers to the grating, in "striking the grating with her toe" she is referring to striking the raised, uneven grating at the point the panels meet. While a fact finder could conclude to the contrary, I believe there is at least a question of fact on this issue. Thus, she testified, "I know I caught on something at that grating section." She didn't know whether it was one of the nails or bolts or the differences in levels. J.A. at 60; J.A. at 103.

I would find that there exist issues of fact as to foreseeability and causation; therefore, I would reverse the grant of summary judgment in favor of CSX and remand the case to the district court for a trial on the remaining disputed issues of fact. Accordingly, I respectfully dissent.

12